ALBA STIMSON, SHUBAEL CONVERSE AND L. R. JENNE *v.* WILLIAM E. LEWIS ET AL.

[IN CHANCERY.]

*Bill in Chancery. Parties. Non Joinder. Partnership.*

A bill will not be dismissed because all the persons materially interested in the subject matter, were not made parties to the suit, where the number is so great as to make it impracticable or greatly inconvenient and expensive But it must appear that a full and complete decree can be made as between the parties before the court, and that without substantial injury to third persons.

An association under the name of the New England Protective Union, Division No. 236, was so organized as to constitute the members co-partners. Its

articles of association provided for the admission of new members with the consent of the directors, on payment of five dollars, without the assent of other partners, and that "any member of the division by surrendering his certificate of membership to the store keeper, may draw from the store in goods a sum not exceeding four dollars, said certificate to be returned when the amount thus drawn shall have been paid, if paid within thirty days.', *Held,*that this last provision was designed to provide a way by which a member could withdraw from the association without embarrassing the business of the same, and be absolved from all liability as between *himself and the association*, and not a method by which he may obtain credit with the firm.

*Held* further, that a member might transfer his interest to another member, and thereby terminate his connection with the association, the directors assenting thereto.

*Held* also, that if the association was insolvent, it would have a right to refuse to accept the surrender of a certificate of membership.

APPEAL from the court of chancery. The bill was brought to dissolve a partnership, and praying not only for its dissolution, but for the closing up of its affairs, and for contribution by the members, or a portion of them, for the payment of certain liabilities. The orators and defendants were members of an association, called the New England Protective Union, Division No. 236, organized March 28th, 1851, and composed of about eighty members. The bill makes twenty-eight defendants; upon four of whom no service was made; and the bill is taken as confessed as to eight. Seventeen filed answers; of whom thirteen claimed that they ceased to belong to the association by reason of a surrender of their certificates of membership—and four by reason of a sale of their certificates to one Lewis Fowler, a member of the association. All admitted a former membership of the association.

The association was ascertained to be insolvent in September, 1857, and closed its business soon after.

The other material facts are stated in the opinion.

This case was argued at the February Term, 1862;—the opinion delivered February Term, 1863.

*Converse & French*, for the orators.

*Washburn & Marsh*, for the defendants,—that all members of the partnership, however numerous, must be before the court, cited *Evans* v. *Stokes*, 15 Eng. Cond. Ch. 25 ; *Brainbridge* v. *Burton*, 17 *ib.* 538. See note 7, to *Wallworth* v. *Holt*, 18 *ib.* 640 ; *Hallett* v. *Hallett*, 2 Paige Ch. 18 ; Mitford's Pleadings 144 ; Collyer on Part. 200 ; Bisset on Part. [325.]

PIERPOINT, J. It is insisted that this bill should be dismissed for the want of necessary parties.

The general principle is well settled, that all persons materially interested in the subject matter of the bill, either as plaintiffs or defendants, ought to be made parties to the suit, so that the court may make a decree, that shall be complete between the parties, prevent future litigation, and a multiplicity of suits, and may see that no injustice is done either to the parties before the court, or to the interests of others. It is said that the want of parties, does not affect the jurisdiction, but addresses itself to the policy of the court ; that the rule was framed by the court itself, for the purpose of justice, and is therefore susceptible of modification, for the promotion of the intended object, and is always more or less a matter of discretion depending on convenience. *Elmendorf* v. *Taylor*, 10 Wheaton 167 ; *Ex'r Brasher* v. *Van Cortland*, 2 J. C. R. 247 ; Fonb. Eq. 297, n. ; Daniel's Ch. 319.

One class of cases which it has been held do not come within the rule, is where the number of persons interested is so great, as to make it impracticable to bring in all the parties, or when it would be attended with great inconvenience and expense. Daniels, in his work on Ch'y Plea. and Prac., makes use of the following language : " The rule that all parties liable to a demand should be before the court, was a rule of convenience, to prevent further suits for a contribution, and not a rule of necessity, and therefore might be dispensed with, especially when the parties were many and the delays might be multiplied and continued ;

therefore where there were a great number of obligors, and many of them were dead, and some of them having assets and others none, the court proceeded to a decree, though all of them were not before it, and cites 2 Atk. 510 ; 2 Eq. Ca. Ab. 166 ; Finch 105 ; 1 Eq. Ca. Ab. 70 ; 1 Story Eq. Jur. §§ 78–82. ' The rule, and the exception of this class of cases, is fully recognized; and clearly stated, in *Adair* v. *The New River Co.*, 11 Vesey 429. The practice is common in our courts, when the persons in interest are numerous to allow parties plaintiffs to bring a bill in behalf of themselves, and others interested without making such others parties, there being a sufficient number before the court to represent the rights of all. The rule seems to be the same, substantially, in regard to the defendants. Daniels in his Ch. Pr. 320, n. lays down this principle : " The same rule applies to cases where there are many persons defendants belonging to voluntary associations, against whom the suit is brought, as to cases where the bill is brought by some proprietors as plaintiffs in behalf of all." And see Story Eq. Pl. 116 ; 3 Mason 315, 319 ; *Wood* v. *Dummer*, 3 Met. 474 ; 4 Paige 23.

In all such cases it must appear that a full and complete decree can be made as between the parties before the court, and that without substantial injury to third persons.

In this case it appears that the parties to the bill, together with a large number of other persons, formed, and became members of an association, for the purpose of carrying on the mercantile business. Many of the persons who became members have since deceased, some leaving estates that have been settled, and others not. Many were out of the jurisdiction of this court when the bill was brought, and the number of the remainder is very great. In view of all these facts, it would seem that the difficulties, delay and expense that would inevitably attend the attempt to make all the persons who have an interest in the matter, parties to the bill, would be so great that the case may well be regarded as coming within the exception to the general rule, especially if no difficulty is found in doing justice to all parties to the bill, and without injury to the interests of others.

FEBRUARY TERM, 1863. 95

Stimson et al. *v.* Lewis et al.

The agreement under which the association was formed is peculiar in some of its provisions, but it is conceded upon both sides, that the effect of it was to constitute the members copartners in the business contemplated.

They evidently anticipated success in their enterprise, as the result of the wisdom of their plan, and expected an increase of their number, from the going in of those who would be desirous of participating in the benefits of it. They accordingly provided for the admission of applicants, with the consent of the directors, and the payment of the prescribed sum, without the assent of the other partners. It was also undoubtedly supposed, that such business connection would continue for a long period, and as the only material benefit to be derived from being a member, consisted in being thereby enabled to obtain goods at the company store at a less price than they would, ordinarily, be compelled to pay elsewhere, they must necessarily have expected, that owing to the removal of members from the vicinity of the company's store, so that they could not enjoy the benefits of being members, and from a variety of other causes, there would arise a necessity for, and a desire on the part of some members, to withdraw from the concern, and it would have been perfectly natural in framing their articles of association, that they should have provided a method by which such members might readily withdraw, and be let out of the company, without involving the necessity of closing up the business, or in any way deranging, or embarrassing, the business operations of those who remained; and whether they did, or did not, provide such a method, is the main question involved in this case.

In the 13th article of the association, it is provided that "any member of the Division by surrendering his certificate (of membership) to the storekeeper, may draw from the store in goods a sum not exceeding four dollars, said certificate to be returned when the amount thus drawn shall have been paid, if paid within thirty days." It is claimed on the part of the defendants that the object of this article, (and the principal one,) was to furnish a method by which members could withdraw from the associa-

tion. The orators herein claim, that the sole object of this arti-
cle was to enable the members to obtain a credit with the firm,
to the amount of four dollars, for the period of thirty days. If
the object was as claimed by either party, it must be conceded
that the idea was not very clearly expressed, by the person who
drafted the article, and if we were left solely to the article itself
we might find some difficulty in determining how it should be
construed. But when taken in connection with the situation of
the parties, the subject matter and nature of the contract, and
the general purpose, all of which it is proper to take into con-
sideration, and also the construction which the parties practically
put upon it, as evidenced by their acts, and proceedings with ref-
erence to it, before any question arose in regard to the subject,
and on a careful consideration of all the evidence bearing upon
the question, we are satisfied that it was the intention of the
parties to provide, by this article, a method by which members
might dissolve their connection with the association, without
disturbing or embarrassing the business operations of the con-
cern.

The practical operation of such arrangement is, that the com-
pany buy out the interest of such members as choose to leave,
and pay them four-fifths of the capital they had put in. This we
think, from all the evidence, was the understanding of the mem-
bers generally, at the time the association was formed; and it
was so represented by them to others who subsequently joined.

If then any member of the association, seeking to withdraw
therefrom, should surrender his certificate for that purpose, and
the association through its appropriate officers, should receive
said certificate, and pay the member the four-fifths of his capital
paid in, according to the terms of said 13th article, and the
member should not within the thirty days return such capital, so
as to reinstate himself in the association, but should regard him-
self, and be regarded and treated by the association, as being no
longer a member of it, such person would thence forward cease
to be a member, and be absolved from all liability, *as between
himself and the association*, both for debts existing at the time,

and for those subsequently created.. Whatever interest the member had therein beyond the said four-fifths, would vest in the association, and the debts if any must be paid by them.

If however the association should refuse to accept of the surrender and certificate, and to pay back to the member the stipulated portion of the capital he had paid in, for the reason that the association was in fact insolvent, and insist that such member should pay his proportion of the losses that had been sustained in the prosecution of the business, they would have an undoubted right so to do ; any other construction would be .a .palpable violation of the plain principles of justice and sound sense.

The articles are silent as to the course to be pursued, in case the association is insolvent. Perhaps this may be accounted for by the fact, that the theory upon which these companies are formed, is, that the business is to be conducted upon the cash principle, no debts are to be contracted, and no credit given—of course insolvency could hardly be expected. How this theory was to be carried out in practice, on so small a capital as was required to be paid in, is one of the mysteries connected with this class of associations, that the originators of the system, seem never to have very clearly explained. However this may be, in the absence of any stipulation on the subject, the general principles of law fix upon each member a liability to pay his proportion of the losses of the business, if any are sustained while he is a member, and this liability he cannot throw off without the consent of the association.

In this case we think the evidence fully establishes the fact that a large part of the defendants who have answered the bill, did surrender their certificates, and receive their four dollars according to said article 13 ; that such surrender was accepted ; that the officers of the company and other members had knowledge thereof at the time ; that a record of the fact was made on the books of the company which were open to the inspection of all members ; that no objection thereto was made by any one ; but such members were from the time of such surrender regarded, and treated, by the association as having dissolved their connec-

tion with, and as being no longer members of it. They had virtually sold their interest in the concern to their associates, according to the terms of the original agreement, and were, as between themselves, discharged from all liability on account of it.

Another portion of the defendants who have answered the bill, did not surrender their certificates to the company under said 13th article, but sold and transferred their interest in the company, to one Lewis Fowler, who at the time he purchased their interest, was also a member of the association, and is made a party defendant to this bill.

As a general rule one partner has no right to sell his interest in the partnership and its property to a third person, so as to put such third person in his place in the firm, without the consent of his co-partners. Neither can one of three or more partners sell his interest to one of his co-partners, so as to divest himself of his connection with the firm, without the consent of the other partners; yet either may be done with such consent, or if such acts are in accordance with the terms of the original agreement.

In this case the terms of the agreement, the end to be attained, and the method by which the object was to be accomplished, are unlike what is ordinarily found in contracts of co-partnership for business purposes. Provision was made for the admission of additional members without the consent of the old ones; the consent of the directors was all that was required, and as we have seen, provision was made for the withdrawal of members. The purpose was not to accumulate profits, for distribution among the members, but to enable the members to obtain goods at the company store at a low rate. The personal services of the members were not expected or required in carrying on the business, except such as might be selected, and as should consent to serve as officers of the association, and to such officers were given the entire control and management of the business affairs of the concern. Under such an agreement the accession, or withdrawal of members, is of comparatively slight importance,

Stimson et al. *v.* Lewis et al.

and might well be left to the directors. The reasons upon which the general rule is founded, have no force in a case of this kind. If a member has the right to withdraw, by surrendering his certificate and taking out four-fifths of the amount paid in, it is difficult to see what cause of complaint the other members could have, if instead of doing so, he transfers his interest to another member of the firm, and takes nothing out. No new member is brought into the firm, and the rights and privileges of the other members are in no respect abridged or changed. But in this case the transfers by these defendants to Fowler, were made by them with the knowledge of the directors and other members at the time, or immediately thereafter, and were practically assented to by them. From that time they were not regarded, or treated, as members, by the officers or members of the association, or claimed as such, until a long time thereafter, when the association was found to be insolvent, and it had become a matter of interest to each member to have as many associates as he could. At the time these defendants transferred their interest to Fowler, and also at the time of the surrender, the company was considered by all parties as solvent, and that they had a surplus of assets over their liabilities, and so far as the evidence shows, that seems to have been the fact.

In view of all these circumstances we think this class of the defendants must be regarded as having terminated their connection with the association, when they sold their interest to Fowler; the association through its appropriate officers having assented to, and practically recognized the act.

The question as to Betsey M. Tilden, one of the defendants who has answered the bill, stands on different ground. It appears that this defendant in October, 1857, offered to surrender her certificate, and withdraw from the association. At this time it was known that the association was insolvent, and that was understood by Mrs. Tilden. The officers of the company refused to accept of her certificate as surrendered, and pay her back the proportion of what she had paid in. This we think they had a perfect right to do. Having remained a member and enjoyed

the advantages of such connection until the company had become insolvent, she could not then withdraw, and discharge herself from liability, without the consent of the association. She must therefore be held liable as a member of the association ; and the orators are entitled to a decree against her for such proportion of the loss sustained during the time she was a member, as her interest in the concern bears to that of all the other members, during the same period.

As to Fowler, and other defendants if any, who have not answered or made defence, the orators are entitled to a decree according to the prayer of the bill ; the bill as to them being taken as confessed.

The result is that the decree of the chancellor is reversed and the case remanded with direction that the bill as to all the defendants who have answered the bill, except Betsey M. Tilden, be dismissed with cost.

That as to Betsey M. Tilden and such of the defendants as have allowed the bill to be taken as confessed, there be a decree for the orators and the case referred to a master to ascertain the amount of the indebtedness of the association over their assets, and the proportion that each of such defendants should pay, having reference to the time when such defendants became members and the time when the losses accrued, and under such rules and regulations as may be prescribed by the chancellor in his discretion, and when such sums are ascertained, a decree to be entered therefor with costs.