CHARLES DEWEY, INSPECTOR OF FINANCE v. THE
ST. ALBANS TRUST COMPANY.

*Trust Company. Inspector of Finance. Receiver, Appoint-
ment of, does not work a Dissolution of the
Corporation. R. L. s. 3546.*

A receiver was appointed to take control of the St. Albans Trust Company
on the petition of the inspector of finance, setting forth that he had
ascertained and believed said company to be insolvent. An injunction
was also issued restraining the trust company, its president, treasurer,
and other officers, from transacting any further business, etc., and from
all custody of or interference with its property, until further order.
The charter provided "that in case of the dissolution of said company,"
the deposits in favor of minors, insane persons, or married women, should
have a preference. It did not appear that the company had lost its
power to resume its business; or that it was insolvent in fact,—but
insolvent only in the sense of inability to meet its obligations in due
course of business. *Held,* that there was not a dissolution of the corpor-
ation, and consequently, no class of creditors could be preferred.

PETITION for the appointment of a receiver, brought by Charles
Dewey, inspector of finance, to take charge of the St. Albans
Trust Company. Also a petition brought by C. W. Rich, the
receiver of said company, praying that the court might prescribe
the order, proportion, and manner of distribution of the funds of
the trust company. Heard, September Term, 1883. ROYCE,
Chancellor, held that all the depositors stood upon terms of per-
fect equality, that no class of depositors was entitled to any
preference over others, and decreed that the funds should be
distributed *pro rata* to the depositors.

*Edson, Cross & Start, Farrington & Post,* and *A. G. Safford,* for certain depositors claiming priority.

The present contention is solely with reference to the construction of that section of the charter giving a preference. It is not a proceeding according to the ordinary course of equity, but a statutory remedy applicable only in its operation to the affairs of insolvent moneyed corporations. R. L. ss. 3546, 3555, 3601; *Curran* v. *Arkansas,* 15 How. 304. It is not contended that a technical dissolution of the corporation in a court of law has occurred; but such a condition of affairs,—insolvency, suspension of business, appointment of a receiver unappealed from—is so far a practical dissolution as to call into action the remidial clauses of the charter. Ang. Corp. 613; *Slee* v. *Bloom,* 19 Johns. 456; *Penniman* v. *Briggs,* Hopk. 343; *Verplank* v. *Ins. Co.,* 2 Paige, 438; *Bank Commissioners* v. *Bank of Buffalo,* 6 Paige, 497; *Bruce* v. *Platt,* 80 N. Y., 379; 2 Kent Com. 310–11; *Folger* v. *Ins. Co.,* 99 Mass. 267. In remedial statutes, courts carry out the intention of the legislature,—overriding the strict meaning of words. *Henry* v. *Tilson.* 17 Vt. 479; Pott. Dwarris. After the receiver has ended his work there will be nothing left to divide or to do. It will be a bank without money, a trust company without a trust.

*Noble & Smith* and *Daniel Roberts,* for the appellees, argued substantially as the court hold, and cited Ang. Corp. 728, 738; *Brinckerhoff* v. *Brown,* 7 Johns. Ch. 217; *Searsburgh T. Co.* v. *Cutler,* 6 Vt. 315; *Brandon Iron Co* v. *Gleason,* 24 Vt. 228; *Van Hook* v. *Whitelock,* 3 Paige, 102; 15 Pick. 351; 8 Pet. 281; 18 How. 480; 9 Wall. 23; 104 U. S. 462; Mor. Corp. pp. 629, 641, 660; *People* v. *Manhattan Co.,* 9 Wend. 351; 2 Wait Act. & Def. 347; Green Bri. 786; Ang. Corp. (10th ed.) 770; *Mickles* v. *Bank,* 11 Paige, 118; *Ormsbee* v. *Vt. Copper Mining Co.,* 65 Barb. 360; *People* v. *Turnpike Co.,* 11 Vt. 431; *State* v. *Turnpike Co.,* 8 R. I. 182; *Bradt* v. *Benedict,* 17 N. Y. 93; *People* v. *Hudson,* 6 Cow. 219; *Moseley* v. *Burrows,* 52 Tex. 396; *Lee* v. *Hilburn,* 3 Gray, 94; *Toof* v. *Martin,* 13 Wall. 40; *Coburn* v. *Boston Co.,* 10 Gray, 245; *Lincoln* v. *Fitch,* 42 Me. 456; High Rec. ss. 288, 322, 344, 358,

833; *Bank* v. *Bank*, 14 Wall. 383; *Dobbins* v. *Banking Co.*, 1 Am. Corp. Cas. 317.

The opinion of the court was delivered by

ROWELL, J. The charter of this trust company, granted in 1868,—St. 1868, No. 157—provides " that in case of the dissolution of said company, by act of law or otherwise, the debts due from said company, incurred by deposits in favor of minors, insane persons or married women—such deposits having been made for married women in their own right—shall have a preference and be satisfied before any other debts due from said corporation are paid."

On August 17, 1883, the Inspector of Finance, pursuant to the statute in such case made and provided, applied to the Court of Chancery by petition, setting forth that he had ascertained and believed said company to be insolvent, and praying for an injunction against the same, its officers, agents, and servants, restraining it and them from all interference with or control of the books, assets, and property of said company, and for the appointment of a receiver to take charge thereof, subject to the order and direction of the court, and for such further orders and directions as to the court should seem meet.

Thereupon notice to show cause was duly issued and served, and said company appeared, whereupon, no cause being shown nor objection made, the court granted an injunction restraining said company, its president, treasurer and other officers and directors, and each and every of them, its and their agents and servants, from transacting any further business as such trust company until further order, and from all custody of or interference with the books, papers, assets, and property of every name and nature belonging to said company, except to safely keep and preserve the same until delivered to the receiver thereafter to be appointed or until further order. At the same time the court appointed a receiver, and, upon giving the required bond, ordered him to take charge and possession of the property of said company at once, and to administer the same according to law, subject at all times to the further order and direction of the court.

On November 10, 1883, the receiver preferred his petition to said court, setting forth that on October 4, 1883, the court ordered that all creditors of said company should present and prove their claims to him by December 1, 1883; that under and pursuant to said order, a very large number of the creditors of said company had presented their claims with proof thereof, and that he had reason to believe that all or nearly all outstanding claims against said company would be presented, with proof thereof, within the time limited therefor; and further setting forth the provision of said charter above recited, and that a considerable number of persons had presented claims, accompanied with proof, for debts due from said company incurred by deposits in favor of minors, insane persons, and married women in their own right, and insisted that said claims should be preferred and be satisfied before any other debts due from said corporation were paid; that he had realized a considerable amount of money from the assets of said company, and expected to realize more therefrom from time to time, and that it was for the interest of the creditors of said company that the funds thus realized and to be realized should be paid and distributed to and among said creditors according to their legal rights as soon as reasonably might be; that the creditors of said company who claimed no preference insisted upon an equal and a ratable payment and distribution of said funds to and among all the creditors thereof; and praying for an order, directing him in the premises, and prescribing in what order, proportion, and manner payment and distribution should be made with reference to the demands for which preference was claimed as aforesaid and to the other debts due from said company.

Due notice of said last-mentioned petition having been given, the same came on to be heard on December 4, 1883, the parties appearing and being fully heard in the premises, whereupon it was ordered and decreed that all the depositors who had proved or might prove their claims as such stood and should stand "on terms of perfect equality of right to share in the division and distribution of the funds or assets of said company, and that no depositor or class of depositors is entitled to any preference over others," and the receiver was ordered and directed to pay

out and distribute said funds and assets accordingly. From this order, some of those claiming a preference have appealed.

I have now stated the substance of all the record discloses, and hence all there is in the case on which to base judgment.

The defendant is proceeded against as, and only as, an insolvent corporation, and it cannot fail to be observed that the record is exceedingly barren of facts to show its real financial condition.

It is not claimed by the appellants that this company is dissolved to the extent of losing its corporate existence; but they contend that it is absolutely and hopelessly insolvent, and that there is such a suspension of its powers and ability to do business as to render it incapable of fulfilling the object and purpose of its creation, and hence, that to all practicable intents and purposes, and within the meaning of the charter, it is *dissolved*, and that, therefore, the right of preference attaches.

But the record does not show any such condition of things. If it be said, as perhaps it may well be, that the granting of the injunction and the appointment of the receiver imply an adjudication of insolvency, it would still remain to inquire, Insolvency in what sense?

The term *insolvency* is not always used in the same sense. It is sometimes used to denote an insufficiency of the entire property and assets of an individual to pay his debts. This is its general and popular meaning. But it is also used in a more restricted sense, to express the inability of a party to pay his debts as they become due in the ordinary course of business. It is in this latter sense that the term is used when traders and merchants are said to be insolvent; and as applied to them, it is the sense in which the National Bankrupt Act used the term. *Toof* v. *Martin*, 13 Wall. 40. So under the Massachusetts insolvent acts, the term is not construed to mean an absolute inability to pay one's debts at some future time on the settlement and winding up of his affairs; but an inability to pay in the ordinary course, as persons carrying on trade usually do. *Thompson* v. *Thompson*, 4 Cush. 127, 134. So under the English Bankrupt Act, the phrase, *insolvent circumstances*, is construed to mean an inability to pay in the ordinary course, as

persons carrying on trade usually do. *Bayly* v. *Schofield*, 1 M. & S. 338, 349; *Shone* v. *Lucas*, 3 D. & R. 218.

*Denike* v. *The New York & Rosendale Lime & Cement Co.* 80 N. Y. 599, was an action in favor of some of the stockholders of said company for a dissolution of the corporation and the appointment of a receiver and the winding up of its affairs. It was alleged and claimed, among other things, that the company was insolvent. The statutes of New York provide that "whenever any incorporated company shall have remained insolvent for one whole year * * * it shall be deemed to have surrendered the rights, privileges, and franchises granted by any act of incorporation * * * and shall be deemed to be dissolved." In denying the relief sought, the court said : " There is no finding that the property of this company was not sufficient to pay all its debts. It was simply found that it was insolvent, and that may mean simply an inability to pay and discharge its obligations as they accrue

\*          \*          \*          \*          \*          \*          \*          \*

in the ordinary course of its business. The plaintiffs gave evidence tending to show that the property of the company was not equal in value to the amount of its debts ; and the defendant gave evidence tending to show that there was property sufficient to pay all the debts and still leave the capital nearly or quite intact. What the precise truth was as to the value of the property the referee did not determine and was not requested to determine, and hence we do not know."

So in this case, we have no information whatever as to the real financial condition of this company. For aught that the record discloses, it may be insolvent only in the sense of not having been able to meet its obligations in the due course of business, a mere temporary embarrassment, and may in fact be solvent in the sense of having sufficient property to discharge all its obligations on a final settlement and winding up of its affairs.

The charter provides that the corporation shall be liable at all events, the act of God and the public enemies only excepted, for all deposits. There can, therefore, be no loss to depositors until

31

the capital stock is gone; and the charter provides that when that is impaired by losses or otherwise, the directors *shall forthwith repair the same by assessment.*

Nothing appears to show that such an assessment would not relieve this institution from all embarrassment, and render further administration by the receiver unnecessary.

The New York cases, on which so much reliance is placed, establish the doctrine that if corporations do, or suffer to be done, acts that destroy the end and object of their creation, it is equivalent to a surrender of their corporate rights; but they do not decide that mere insolvency, though total, is sufficient evidence of such surrender.

In *Slee* v. *Bloom*, 19 Johns. 456, the corporation had not only ceased to own any property, real or personal, but had totally ceased from acting for the space of about a year and four months. It was possessed of nothing and had abandoned the end and object of its creation, without pretense of expectation or hope of ever resuming its functions. Chancellor KENT says of this case: "It amounts only to this, that if a private corporation suffer all its property to be sacrificed, and the trustees actually relinquish their trust, and omit the annual election, and do no one act manifesting an intention to resume its corporate functions, the courts of justice may, *for the sake of the remedy and in favor of creditors,* who, in such case, have their remedy against the individual members, presume a virtual surrender of the corporate rights and a dissolution of the corporation. This is the utmost extent to which the doctrine was carried, and to this extent it is a safe and reasonable doctrine." 2 Kent Com. 311.

*Penniman* v. *Briggs*, Hopk. 343, S. C. in error, 8 Cow. 387, adopts and applies the doctrine of *Slee* v. *Bloom*. There a corporation for manufacturing purposes, established under the general act of March 22, 1811, had all its property, real and personal, sold on execution and otherwise applied for the payment of its debts, and ceased to hold any property whatever, and was totally insolvent, and had ceased to manufacture or act as a corporation

in any respect, and the trustees had no power to resuscitate the company by a call on the stockholders, as their shares were paid up; and it was held that the corporation was to be deemed dissolved for the purpose of the remedy of creditors against the stockholders individually.

But the rule established by these cases is qualified by another rule. In *Brinkerhoff* v. *Brown*, 7 Johns. Ch. 217, it is said that "it does not follow that a corporation is dissolved by the sale of its visible and tangible property for the payment of its debts and the temporary suspension of its business, so long as it has the moral and legal capacity to increase its subscriptions, call in more capital, and resume its business." And the court refused to carry the doctrine of *Slee* v. *Bloom* to the extent of holding that the sale of all the visible property of a corporation was, of itself, sufficient evidence of a surrender, when all the other material circumstances were wanting, and said that the best evidence of a surrender that *Slee* v. *Bloom* afforded was, that the trustees had virtually renounced their trust and ceased to act, and the regular annual election of trustees had been discontinued.

*Bradt* v. *Benedict*, 17 N. Y. 93, was a suit in favor of a creditor of a manufacturing corporation against a stockholder of the company, to enforce his individual liability under the St. of 1811. In reviewing *Slee* v. *Bloom*, *Penniman* v. *Briggs*, and other decisions in that State, SELDEN, J., says : "It appears from these cases, that in order to justify the inference that a corporation has surrendered its franchises, it is not sufficient that it has become utterly insolvent, nor even that every vestige of its property has been sold by a sheriff, *but it must also have lost all power to continue or to resume its business*," and that nothing short of this is equivalent to a surrender except as otherwise provided by statute. And in the same case, PRATT, J., says that the doctrine of *Slee* v. *Bloom*, should not be carried beyond the precise facts on which the case rested.

Can it be said of the defendant company that it has lost all power to resume its business? Obviously not. It does not

even appear that it is insolvent in fact, much less that it is insolvent to such an extent that depositors can suffer thereby; nor is there anything to show that it has lost its power to resume its business if permitted to do so. Hence we have absolutely none of the essential elements for presuming a surrender of corporate rights and privileges, which is the ground and reason of holding a dissolution in effect as distinguished from a dissolution in fact.

But another question remains for consideration: Did the appointment of the receiver, with the power given him, have the effect of virtually dissolving the corporation? The receiver is ordered to take charge and possession of the property and effects of the corporation and administer the same according to law, subject to the order of the court.

It is to be observed that the statute under which the receiver is appointed is unlike the statute under which a receiver is appointed to close up the affairs of a private corporation whose charter has expired or been annulled by forfeiture or otherwise.  Under the latter statute—R. L. s. 3275—the receiver, by virtue of the power conferred on him by the statute, not only pays the debts of the corporation, but distributes the balance of the funds, if any, among the stockholders or members of the corporation or their legal representatives, thereby finally settling and winding up all the affairs of the corporation; whereas under the former statute—R. L. s. 3555—the receiver pays the debts only, and does not distribute the surplus among stockholders, because, evidently, the corporation is still in existence, legally capable of receiving the surplus and of resuming its business and accomplishing the end and object of its creation. And even though the capital is wholly gone, there would seem to be no legal reason, before a surrender or a forfeiture, to prevent the members from furnishing renewed capital and then proceeding to use their corporate powers. *Coburn* v. *Boston Papier Maché Manufacturing Co.* 10 Gray, 243.

But in case of the expiration or annulment of a charter, the corporate existence is gone for the purpose of continuing the

business for which the corporation was established—R. L. s. 3272—and nothing remains to be done with the surplus except to divide it among the stockholders or members.

In *Bank Commissioners* v. *Bank of Buffalo*, 6 Paige, 497, it is said that as the statute relating to proceedings in equity against corporations contemplates the making of a final decree on the bill or petition against the company that is to deprive it of all its corporate property *and powers*, and as a receiver appointed upon such a proceeding, unless restrained in his powers by the order appointing him, is absolutely vested with all the corporate property and effects, and authorized to distribute the surplus thereof among the stockholders after payment of the debts of the company, it follows of course that a final order or decree for the appointment of such a receiver is a virtual dissolution of the corporation.

The powers thus referred to as conferred upon the receiver are given by statute; and it is said in *Verplank* v. *The Mercantile Ins. Co. of New York*, 2 Paige, 438, that the order appointing such a receiver is in effect a final order in the cause, and unless altered or revoked operates a virtual dissolution of the corporation; that it is not a common-law receivership, but that the receiver is a statutory assignee, vested with nearly all the powers and authority of the assignee of an insolvent debtor. And the court points out the difference between such a receiver and a receiver under another section of the same statute and under an earlier statute, which are strictly common-law receivers, such as are usually appointed in suits between party and party, and who have no powers except such as are conferred upon them by the order of their appointment and the course and practice of the court.

Indeed, so effective is the statute under which the receiver is said to be a statutory assignee, that after the appointment of such a receiver the answer of the corporation under the corporate seal is of no effect, the corporation being virtually dissolved by the appointment, the statute substituting the receiver for the

corporation as to all the corporate property and effects.    *Davenport* v. *City Bank of Buffalo*, 9 Paige, 12.

Now the receivership in the case at bar is little else than a common-law receivership.  The receiver has no particular statutory powers conferred upon him ; but in the language of the statute, he is " subject to the Court of Chancery," and is made so by the order of his appointment ; and said order is not strictly a judicial act in the sense of being a decree or judgment finally determining rights ; and hence it is that the legislature may authorize the Executive Department of the Government to appoint receivers with authority to take charge of and wind up the affairs of insolvent corporations, such as banking institutions. High Receivers, s. 343.   And as the object of this proceeding is to protect and preserve the corporate assets for the benefit of creditors, the court may on motion discharge the receiver, and allow the corporation to resume the management of its affairs, if satisfied that the interest of all parties would be best subserved in that way ; and for aught that appears this company may now be in condition to successfully make such a motion.

We do not think that such a receivership as this, in view of the facts disclosed in this case, can be said in any just sense to operate a virtual dissolution of the corporation.

Decree affirmed and cause remanded.   TAFT, J., dissents.