Charles Dewey, Inspector of Finance, *v.* The St. Albans Trust Co.

GENERAL TERM 1887.

Present: ROYCE, Ch. J., ROSS, POWERS, VEAZEY, TAFT,
ROWELL and TYLER, JJ.

CHARLES DEWEY, INSPECTOR OF FINANCE, *v.* THE ST.
ALBANS TRUST CO.

[IN CHANCERY.]

*Trust Company, Dissolution of. Surrender of Corporate
Rights. Parties. Receiver.* R. L. ss. 773, 3556.

1. The inspector of finance obtained an injunction against an insolvent trust company, restraining it from transacting further business; and also the appointment of a receiver, who was ordered to take possession of the property and administer it according to law. The receiver preferred his petition, praying for the direction of the court as to the distribution of the funds, with reference to one section of the charter, which gave a preference to the debts of minors, insane persons, and married women, in "case of the dissolution of said company by act of law or otherwise." There were more than 2400 depositor , and more than 1100 claimed a preference. Notice of the hearing on the petition was given by publication three weeks successively in a newspaper, and by acceptance of service by the chairman of the depositors' committee. The receiver and counsel for the general creditors, and also counsel for those who claimed a preference, appeared; and after a full hearing it was decreed that there should be an equal distribution of the funds, on the ground that insolvency did not work a dissolution of the corporation. An appeal was taken on behalf of eight married women and four minors, some of whom intervene in this proceeding; and the decree below was affirmed. On a petition brought a little more than a year after the first one, for the purpose of obtaining a preference;—*Held,*

2. That, although the general rule is that all persons interested in the litigation should be before the court, this case is within the exception that, where the parties are so numerous as to make it impracticable or greatly inconvenient and expensive, it is sufficient, if such number be joined as will fairly represent the interest of all; and that, as both classes of depositors were fairly represented in the litigation, all of them were bound by the decree.

Charles Dewey, Inspector of Finance, v. The St. Albans Trust Co.

3 That, as the doctrine of estoppel by judgment is not applicable to a case ambulatory in its nature, the decree does not preclude all future inquiry into the matter; but, in determining whether a dissolution is now shown, the inquiry must be confined to what transpired at a time between the institution of the two proceedings. Relief cannot be granted on what existed before the first decree; and it is not sufficient to show a present state of things adequate to relief.

4 That most of the things alleged in the petition are found by the master to exist at the present time; but it does not appear when those things transpired, except the depreciation of assets, which was large during the last two years; but this does not entitle the petitioners to be heard on the merits; for insolvency, however hopeless, is not sufficient evidence of the surrender of corporate rights.

5 The Supreme Court will look into the whole record of the former adjudication in this case, to see what has been done; and, having been set up in the answer, it is available, though not put in evidence; especially as the petition expressly made the prior proceedings a part of itself, but omitted to set them out, to avoid prolixity.

6 The receiver, in point of fact, represented in court the general creditors, rather than those claiming a preference.

In Chancery. Petition of certain depositors of the St. Albans Trust Company, to obtain an order of preference. Heard on the pleadings and the report of a special master, September Term, 1886, Franklin County. Royce, Chancellor. Decree that the petition be dismissed. Affirmed.

The master found "that the present financial condition of the trust company is that of hopeless insolvency;" that its embarrassment " is not temporary but permanent;" that none of the stockholders or officers " intend to repair the impairment of the capital stock or to resume the business of the company;" that the " trust company has not attempted to perform any of the functions of a corporation since the appointment of a receiver;" that the company ".has become inert, and has at present a mere nominal existence," and from lack of funds is "incapable of performing its functions."

" It appeared that during the last two years, and since the appointment of a receiver, the value of the assets has steadily depreciated below the estimates of that time. In November, 1883, the personal property alone, connected with the Norwood Lumber Company property, was valued at $126,328.78, and

the real estate at $206,501.50,—much greater than its present estimated value; * * * that the receiver's present estimate of the value of what remains of the Norwood Lumber Company property (the personal property having been sold, except $20,000 worth) is but $125,000; in order to get the title to the property the receiver had to surrender $129,000 of its paper."

*Farrington & Post* and *A. G. Safford*, for the petitioners.

Dissolution means a loss of corporate existence, and takes place when there is such a suspension of the company's power to do business as to render it incapable of fulfilling the purpose of its creation and existence.

Plainly, the word as used in the bank charter was intended to mean, either the loss of existence, or the loss of ability and power to act, by reason of its condition. If the former, then no preference can be obtained until these petitioners secure the dissolution by judicial determination; and the legislature clearly did not intent this. If it did, § 17 of the charter is hardly available,—the machinery is so cumbrous.

Rev. Laws, chap. 72; *Green* v. *St. Albans T. Co.* 57 Vt. 340.

There is a fundamental distinction between the dissolution of a corporation and the loss of its franchise or legal right to exist. 2 Morawetz, Priv. Corp. ss. 1002, 1004, 1011, 1040.

And the phrase "dissolving a corporation" is used sometimes as synonomous with annulling a charter or terminating its existence, and sometimes as meaning merely a judicial act which alienates the property and suspends the business of the corporation, without terminating its existence. *Re Independent Ins. Co.* 1 Holmes, 103.

As relates to creditors, "any inability of the company, by reason of a total want of funds, to exercise its functions, will be deemed a dissolution." Ang. & A. Corp. 613; *Slee* v. *Bloom*, 19 Johns. 456; *Penniman* v. *Briggs*, Hopk. 300; *S. C.* 8 Cow. 387; *Verplanck* v. *Mercantile Ins. Co.* 2 Paige,

# 4    GENERAL TERM,

452; *Bank Cmr.* v. *Bank of Buffalo*, 6 Paige, 503; *Bruce* v. *Platt*, 80 N. Y. 379, 386, and cases cited; 2 Kent, Com. 310, 311; *Folger* v. *Columbian Ins. Co.* 99 Mass. 267; *Re Independent Ins. Co. supra*; *Central Ag. & Mech. Asso.* v. *Alabama Gold Life Ins. Co.* 70 Ala. 120; See Ala. Rev. Code s. 1760; *Smith* v. *Huckabee*, 53 Ala. 191; *Perry* v. *Turner*, 55 Mo. 418; *State Sav. Asso.* v. *Kellogg*, 52 Mo. 583; Mo. Gen. Stat. 1865, p. 330, s. 20; 2 N. Y. Rev. Laws, 6th ed. p. 496, s. 7; Act 1811, p. 506, s. 47; 3 N. Y. Rev. Laws, 6th ed. p. 748, s. 50; Thomp. Liab. Stockh. s. 310, note 4; 2 Morawetz Priv. Corp. s. 1002.

It is held in *State Sav. Asso.* v. *Kellogg*, 52 Mo. 583, that an adjudication of bankruptcy against a corporation amounts to a dissolution, so that a suit can be maintained under the statute which provides an action against a stockholder for debts unpaid at the time of dissolution. Mo. Gen. Stat. 1867, p. 330, s. 20; 1 W. S. 393, s. 22.

In a remedial statute, the court will carry into effect the clear intention of the legislature, making the words yield to the spirit. *Henry* v. *Stilson*, 17 Vt. 479.

A thing within the intention is within the statute, though not within the letter. Potter's Dwarr. Stat.

The defendants, under the pleadings and evidence, cannot rely upon a former adjudication. Rob. Dig. p. 134, s. 101; *Simpson* v. *Hart*, 14 Johns. 63.

The records should have been put in evidence. To sustain the estoppel because of a former adjudication, it must appear that the former case was between the same parties; and that the precise question was passed upon; and the burden of proof is upon the defendant. *Pelton* v. *Mott*, 11 Vt. 148; *Aiken* v. *Peck*, 22 Vt. 255; *Continental L. Ins. Co.* v. *Currier*, 58 Vt. 229.

The objection that a defence might have been made in a former action must be limited as applicable to such matters only as might have been used as a defence in that action against

an adverse claim therein,—such matter as, if considered in a subsequent action, would involve an inquiry into the merits of the former judgment. 49 N. Y. 111; *Jordan* v. *Van Epps*, 85 N. Y. 427; *Bray* v. *Hegeman*, 98 N. Y. 351; *Malloney* v. *Horan*, 49 N. Y. 111–116; *Clemens* v. *Clemens*, 37 N. Y. 59; *Bruen* v. *Hone*, 2 Barb. 586–596; *Burwell* v. *Knight*, 51 Barb. 267; *Cromwell* v. *Sac. County*, 94 U. S. 351 (24 L. ed. 195); *Washington, A. & G. S. P. Co.* v. *Sickles*, 72 U. S. 5 Wall. 580 (18 L. ed. 550); *Griffin* v. *Long Island R. Co.* 3 Cent. Rep. 740, 102 N. Y. 449; 25 N. Y. 613; 5 Gray, 316.

*Hard & Cushman* and *Stephen E. Royce* for the defendants.

A receiver "is equally the representative of all parties in his capacity as an officer of the court." High, Receivers, s. 175.

In all chancery proceedings when a large number of persons have a common interest, it is common practice to make only a part of them parties; and when no collusion is suspected this is treated as sufficient. Parties "in the larger legal sense, are all persons having a right to control the proceeding, to make defence, to advance and cross-examine witnesses, and to appeal from the decision if an appeal lies" (1 Greenl. Ev. s. 535); "and, it may be added, those who assumed such a right" (Bigelow, Estop. 59).

An adjudication is final and conclusive, not only as to the matter actually determined, but as to every other matter which the parties might have litigated and have had decided as incident to or essentially connected with the subject-matter, coming within the legitimate purview of the original action both in respect to matters of claim and of defence. Freem. Judg. s. 249 and note.

The discovery of new evidence not in the power of the party at the former trial forms no exception as to an estoppel. Id.

The former adjudication is conclusive, though the case was improperly managed, and the court misapplied the law. Freem. Judg. s. 260.

The receiver was subject to the orders of the court of chancery, and not only had a right to apply to the court for direction in all doubtful matters, but was in duty bound to do so.

High, Receivers, ss. 177, 188 ; Rev. Laws, s. 3548.

The receiver, under the direction of the court, has distributed a large amount *pro rata* among the depositors ; and it is too late to change this rule, especially without evidence that the remaining assets are sufficient to pay the claims of preferred depositors. A trust company can be dissolved "by act of law" in only one way, namely, by judgment of court upon a *scire facias* brought in the name of the State. *Green* v. *St. Albans T. Co.* 57 Vt. 340.

The only other ways by which a chartered corporation can be dissolved, are : (1) by expiration according to the terms of the charter ; (2) by voluntary surrender of the franchise to the State,—this must be by vote of the stockholders, and the surrender must be accepted by the legislature ;—(3) by legislative enactment not in violation of the Constitution. Morawetz, Priv. Corp. Chap. 11.

Insolvency of a corporation does not dissolve it, or operate as a cause of forfeiture (Boone, Corp. s. 302 ; Ang. & A. Corp. 11th ed. s. 770 ; Morawetz, Priv. Corp. ed. 1882, s. 636 ; *Coburn* v. *Boston P. M. Co.* 10 Gray, 243 ; *Boston Glass Manufactory* v. *Langdon*, 24 Pick. 49, 53 ; *People* v. *Hudson Bank*, 6 Cow. 217, 219) ; nor do proceedings in insolvency or in bankruptcy (Ang. & A. Corp. 11th ed. s. 770 and note ; *Coburn* v. *Boston P. M. Co. supra; Chamberlin* v. *Huguenot Mfg. Co.* 118 Mass. 532, 536) ; nor does the appointment of a receiver (Ang. & A. Corp. s. 770 ; *Kincaid* v. *Dwinelle*, 59 N. Y. 548, 552 ; *Taylor* v. *Columbian Insurance Co.* 14 Allen, 353).

" Mere nonuser of its franchises by a corporation is not a surrender ; nor are courts warranted in inferring a surrender from an abandonment of the franchise in intention only." A surrender must be accepted. Ang. & A. Corp. s. 773 ;

Morawetz, Priv. Corp. ss. 637, 874; Boone, Corp. s. 201; *Ottaquechee Woolen Co.* v. *Newton*, 57 Vt. 451; *Brandon Iron Co.* v. *Gleason*, 24 Vt. 228.

Nor does an omission to elect officers work a forfeiture of the franchise or a dissolution of the corporation. Ang. & A. Corp. s. 771; Boone, Corp. s. 200.

Even where it is admitted, or conclusively shown, that the contingency has happened which the charter expressly provides shall work a forfeiture of the franchise, nevertheless the corporation cannot be said to be dissolved, or treated as dissolved, until judgment of forfeiture has been rendered in a proceeding brought for that purpose by the State. *Connecticut & P. R. Co.* v. *Bailey*, 24 Vt. 465; *Brandon Iron Co.* v. *Gleason*, id. 228; *Vermont & C. R. Co.* v. *Vermont Cent. R. Co.* 34 Vt. 2, 55; *Briggs* v. *Cape Cod Ship Canal Co.* 17 Rep. 688; 137 Mass. 71; Ang. & A. Corp. s. 777; Morawetz, Priv. Corp. s. 631.

A court of equity has no power to decree a forfeiture of the franchises of a corporation. *Ormsby* v. *Vermont Copper Min. Co.* 47 Vt. 713.

"A case of forfeiture cannot be taken advantage of or enforced against a corporation collaterally or incidentally, or by any other mode than by a direct proceeding for that purpose against the corporation. * * * And the government creating the corporation can alone institute such a proceeding." Ang. & A Corp. s. 777; Boone, Corp. s. 205; Morawetz, Priv. Corp. s. 636; Vt. cases, *supra*.

*Ottaquechee Woolen Co.* v. *Newton*, 57 Vt. 451, is entirely conclusive against the petitioners; and the opinion and briefs afford a very full list of authorities, to which may be added the recent cases of *Atty-Gen* v. *Chicago & E. R. Co.* 112 Ill. 520; *North.* v. *State*, 5 West. Rep. 535, 107 Ind. 356; *Jersey City Gaslight, Co.* v. *Consumers Gas Co.* 4 Cent. Rep. 330, 40 N. J. Eq. 427; *Seasburgh Turnp. Co.* v. *Cutler*, 6 Vt. 315.

The opinion of the court was delivered by

ROWELL, J.  Although the history of this case prior to the bringing of this petition fully appears in the report of it in 56 Vt. 476, yet it will be matter of convenience to restate it here as far as necessary to bring out the point now decided.

On August 17, 1883, the inspector of finance proceeded in chancery against the defendant company as an insolvent corporation, and obtained an injunction, restraining it from transacting any further business as a trust company, and from all custody of or interference with its books and property, except to keep and preserve the same, until further order.  He at the same time obtained the appointment of a receiver, who was ordered to take possession of the property of the company at once, and to administer it according to law, subject to the further order and direction of the court.

The charter of the company provides that in case of its "dissolution * * * by act of law or otherwise," the debts due from it, "incurred by deposits in favor of minors, insane persons, or married women—such deposits having been made for married women in their own right—shall have a preference and be satisfied before any other debts due from said corporation are paid."

The receiver took possession of the property and began to administer it, and on November 10, 1883, for the purpose of obtaining the direction of the court in respect of such administration, he preferred his petition in the case, setting forth that on October 4, 1883, the court ordered that all creditors of the company should present and prove their claims by December 1, 1883 ; that pursuant to said order a large number of creditors had proved their claims, and that he had reason to believe that the rest of them would prove theirs within the time limited ; and further setting forth the provisions of the charter above recited, and that a considerable number of persons had proved claims for debts due for deposits in favor of minors, insane

Charles Dewey, Inspector of Finance, *v.* The St. Albans Trust Co.

persons, and married women in their own right, and insisted that said claims should be preferred and be satisfied before any other debts due from the company were paid; that he had realized a considerable amount of money from the assets of the company, and expected to realize more therefrom from time to time, and that it was for the interest of the creditors of the company that the funds realized and to be realized, should be paid and distributed to and among them according to their legal rights as soon as might be; that the creditors who claimed no preference insisted upon an equal and a rateable payment and distribution of the funds to and among all the creditors; and praying for an order, directing him in the premises, and prescribing in what order, proportion, and manner payment and distribution should be made with reference to the demands for which preference was claimed and with reference to the other debts of the company.

Notice of hearing on this petition on December 4, 1883, was given to all persons interested by publication of the petition and an order of notice, three weeks successively in the St. Albans Messenger and Advertiser, and by acceptance of service by the chairman of the depositors' committee; and at the hearing the receiver and counsel appeared and represented the general creditors and counsel appeared and represented parties who claimed a preference, and a full hearing was had; whereupon it was ordered and decreed that all the depositors who had proved or should prove their claims as such, stood and should stand "on terms of perfect equality of right to share in the division and distribution of the funds or assets of said company, and that no depositor or class of depositors is entitled to any preference over others," and the receiver was ordered to pay out and distribute the funds and assets accordingly. From this decree some of those claiming a preference appealed to this court, when the decree was affirmed and the cause remanded. Subsequently, and in December, 1884, Mr. Kent and his wife—who was a depositor

in the company in her own right and had proved her claim pursuant to order—preferred this petition in the case on behalf of themselves and all others in like interest who might choose to come in and share the expense, for the purpose of obtaining a preference under the charter; and divers other persons of like interest have come in, some of whom appealed from the former decree, and so were unquestionably parties to that adjudication.

The ground for claiming a preference before was and now is, not that the corporation has been dissolved by a judicial forfeiture of its charter, but that its state of suspended animation is death within the meaning of the charter, sufficient for the right of preference to attach.

The present petition is defended on two grounds; namely, that the former decree is conclusive, and that there is no dissolution within the meaning of the charter shown.

As to the first ground of defence:

It is claimed that the former adjudication cannot be availed of here, though set up in the answer, because the record of it has not been put in evidence. But this was not necessary. That decree was made in this present case, the whole record of which was before the Court of Chancery, and this appeal has brought it all before this court.—R. L., s. 773; and the court can properly look into it, to see what has been done in the case, without requiring proof in the ordinary way. *Armstrong* v. *Colby*, 47 Vt., 359. And besides, the petition expressly makes all prior proceedings in the cause a part of itself, but omits to set them out, to avoid prolixity.

It appears that some of the parties that have here intervened were real parties to the proceedings that resulted in the former decree, and so are bound by it to some extent, certainly; but it is said that these petitioners and the rest that have intervened are not bound by it at all, as none of them were real parties to it, and that it does not appear that they had notice of the pendency of the proceedings so they could appear, had they desired to.

The depositors bear to the company the relation of creditors rather than of *cestuis que trust*. *Pope* v. *Savings Bank*, 56 Vt., 284. And although under our statute the receiver probably stands as a representative of all the creditors—*High on Receivers*, s. 314; *Talmage* v. *Pell*, 7 N. Y.,328, 347—yet, as here are conflicting interest between different classes of creditors, and as a right of appeal is given to all persons in interest as in other cases—R. L., s. 3556—there might be some incongruity in saying that the receiver was in court for all in a way to bind all; and more especially so, as the decretal order shows that the receiver and Messrs. Noble & Smith appeared and represented the general creditors, and that Mr. Edson and Mr. Tenney appeared and represented parties claiming to be preferred creditors, from which it would seem that the receiver in point of fact represented the general creditors rather than those claiming a preference.

But the depositors are very numerous, there being more than 2400 of them, and more than 1100 claim a preference. Many of them are undoubtedly dead, some having and some not having personal representatives, and many may have removed from the State or originally lived out of it, so that it would have been entirely impracticable if not impossible to give personal notice to all, and the notice that was given was the only one that could well have been given. Under this notice there was an appearance before the chancellor on behalf of divers persons standing in the same interest as these petitioners and those who have intervened, and a full hearing was had, and an appeal was taken on behalf of eight married women and four minors, some of whom, as we have seen, intervene here, and the case was argued for them in this court by the same counsel who now argue it for the petitioners; and it can justly be said that the rights of the whole class claiming a preference were then fairly represented and fully and honestly maintained and tried; therefore, on well recognized principles, that decree ought to be held binding upon the whole class.

Although the general rule in equity is, that all persons having an interest in the subject-matter in litigation should be before the court, to the end that complete justice may be done and future litigation prevented; yet, there is of necessity an exception to this rule when a failure of justice would ensue from its enforcement. It is said that the want of parties does not affect the jurisdiction, but addresses itself to the policy of the court; that the rule was made by the court for the promotion of justice, and may be modified by it for the same purpose, and is always more or less a matter of discretion depending on convenience. *Stimson* v. *Lewis*, 36 Vt. 91. Cases in which the parties in interest are so numerous as to make it impracticable or greatly inconvenient and expensive to bring them all before the court, form an exception to the rule. And this exception applies to defendants as well as to plaintiffs. Take the case of a voluntary association of many persons. It is sufficient in a suit against them that such a number be made defendants as will fairly represent the interests of all standing in like character and responsibility. Story's Eq. Pl. s. 116.

In the *City of London* v. *Richmond*, 2 Vern. 420, which was a bill against the assignee of a lease for the payment of rent and the performance of covenants, it was held that by dividing his interest into a great many shares the assignee had made it impracticable to have all the sharers before the court.

In *Chancey* v. *May*, Prec. Ch. (Finch's Ed.) 592, one reason given for overruling the demurrer for want of parties was, " that it would be impracticable to make all the proprietors parties, and there would be constant abatements by death and otherwise, and no coming at justice, if all were to be made parties."

In *Lloyd* v. *Loaring*, 6 Ves. 779, LORD ELDON said he had seen in the manuscript notes " strong passages as falling from LORD HARDWICK, that when a great many individuals are interested, there are more cases than those—which are familiar— of creditors and legatees in which the court will let a few

represent the whole." He said that there was a very familiar case in which the court allowed a very few to represent the whole world.

In *Adair* v. *The New River Company*, 11 Ves. 429, he shows how one having a general right at law to demand service to his mill from the inhabitants of a large district, sues in equity : " His demand is upon every individual not to grind corn for their own subsistence except at his mill. To bring actions against every person for subtracting that service is regarded as perfectly impracticable. Therefore a bill is filed to establish the right, and it is not necessary to bring in all the individuals ; not because it is inexpedient, but because it is impracticable. The court therefore requires so many that it can be justly said they will fairly and honestly try the legal right between themselves, all other inhabitants, and the plaintiff ; and when the legal right is thus established, the remedy in equity is very simple—merely a bill, stating that the right has been established in such a proceeding, and upon that ground a court of equity will give the plaintiff relief against the defendants in the second suit, represented only by those in the first suit." See also *Meux* v. *Maltby*, 2 Swanst. 277.

So the creditors of an insolvent debtor who execute the assignment, being numerous and some of them out of the commonwealth, need not be made parties to a bill that concerns the assets. *Stevenson* v. *Austin*, 3 Met. 474.

In a suit by the receiver of a trust and banking company to foreclose a mortgage, the court said it would be oppressive to require all the creditors and stockholders to be made parties. *Mann* v. *Bruce*, 5 N. J. Eq. 413.

The general rule in equity is that a nominal trustee cannot bring a suit in his own name alone, but must join the beneficiaries ; still, it is said that the court will in its discretion dispense with the rule in cases of great inconvenience or of unnecessary expense. *Willink* v. *Canal & Banking Company*, 4 N. J. Eq. 377.

Thus, in *Van Vechten* v. *Terry*, 2 Johns. Ch. 197, which was a bill for the sale of premises mortgaged to the plaintiff by the defendants who were trustees for two hundred and fifty copartners, the court said it would be intolerably oppressive and burdensome to compel the plaintiff to bring in all the beneficiaries, and the delay and expense incident to such a requirement, a reflection upon the justice of the court.

*Stimson* v. *Lewis*, 36 Vt. 91, was a bill to dissolve a partnership consisting of a great many members, and to close up its affairs and compel contribution; and it was held that all need not be made parties, though it was not said that absentees would be bound.

Here we have a current authority, adopting more or less a general principle of exception by which the rule in equity that all persons interested in the subject-matter of the litigation must be made parties, yields when justice requires it, in the instance of either plaintiffs or defendants. A rigid enforcement of the rule would lead to perpetual embarrassment, and in many cases to an absolute denial of justice; and we think this case in respect of the binding quality of this decree comes necessarily within the exception.

But to what extent is the decree binding? Certainly not to the extent of precluding all future inquiry into this matter, based upon things that have transpired since the institution of the former proceedings; for the doctrine of estoppel by judgment has no application to a case that is ambulatory in its nature and has ceased to be the same by progression. *People* v. *Mercein*, 3 Hill, 399.

Thus, a judgment for the defendant in an action of trespass *qua. clau.* is not conclusive upon the right of possession at a subsequent time, because intervening events may have restored the plaintiff to possession or terminated the possession or the right that the defendant had at the former trial. *Thayer* v. *Carew*, 13 Allen, 82. And intervening events affecting the issue may be shown to prevent a former judgment from being

conclusive even when the title has been tried in a writ of entry. *Perkins* v. *Parker,* 10 Allen, 22.

The case turned before on the ground that no dissolution was shown; and the only proper inquiry on this point now is, whether one is now shown, produced by that which did not then exist, but has since transpired; and here we must be confined to the time between the institution of the two proceedings, which is a little more than a year.

This petition alleges that before and at the time of the appointment of the receiver, the company was not merely temporarily embarrassed and unable to meet its liabilities as they matured, but was hopelessly insolvent in fact; that since the appointment of the receiver, no meetings of the stockholders nor of the directors have been held; that the directors have neglected to repair the capital stock by assessment, as required by the charter; that the president has absconded and is insolvent; that neither the officers nor the stockholders expect ever to resume the business of the company; that the funds and assets of the company are all gone, and its insolvency so hopeless that the depositors must suffer loss by reason thereof; and that legal remedies against it are unavailing; that it has become and is a mere nominal, inert body, incapable from its insolvency and lack of funds of hereafter carrying its franchise into effect; that on the appointment of the receiver it ceased to own any real or personal estate, and has acquired none since, and does not expect to acquire any; that since his appointment it has done no one act manifesting an intention to resume the exercise of any of its corporate functions; and that the design and being of the corporation has been fully and finally determined.

It will be noticed that some of these things are alleged to have existed before and at the time of the appointment of the receiver; some, from that time; and some, to now exist, without saying when they transpired, much less, that they transpired since the institution of the former proceedings

Charles Dewey, Inspector of Finance, *v.* The St. Albans Trust Co.

unless as matter of inference and by way of *continuation* from an earlier period.

Nor does essential time appear from the report. Most of the things alleged are found to exist at the present time; but it does not appear when they transpired, except as to the depreciation of assets from former estimates, which is found to have been gradual and large during the last two years. But for aught that appears these things may all have antedated the former proceedings to some extent, though probably intensified since by the mutations of time.

It is claimed that this changed condition in the value of assets is of itself alone sufficient to entitle the petitioners to be heard here on the merits. But mere insolvency, however hopeless, has never been held sufficient evidence of a surrender of corporate rights—and this is the theory on which the cases go;—and besides, it does not appear that the company was not before insolvent in fact. That the assets have since depreciated from former estimates does not show it. In the former proceedings the real financial condition of the company did not appear; but, as we have seen, this petition alleges that it was hopelessly insolvent before then, and this is probably true. It is not sufficient to show a *present* state of things adequate to relief, allowing that such a state is shown, which we do not undertake to say, without avoiding the force of the former decree by showing that those things have since transpired; otherwise we might override that decree, and grant relief for that which existed before but was not made to appear, which would be in effect a rehearing.

This makes it unnecessary to consider the other question involved, as to which we express no opinion.

Decree affirmed and case remanded.