THE BANK COMMISSIONERS *vs.* THE BANK OF BUFFALO.

THE SAME *vs.* THE CITY BANK OF BUFFALO.

THE SAME *vs.* THE COMMERCIAL BANK OF BUFFALO.

Where a bank, by its authorized agents or officers, makes loans and discounts to its directors, or any of them, or upon paper upon which they are responsible, to an amount exceeding in the aggregate one third of the capital of the bank, it is such a violation of the statute as will authorize the court of chancery to grant an injunction and appoint a receiver to wind up the affairs of the corporation and to decree its dissolution. The same as to any other violation of any of the provisions of the first section of the title of the revised statutes relative to monied corporations.

Loans and discounts made by the officers of a bank from its corporate funds will be presumed to have been made by authority of the board of directors, unless it is shown that the funds of the bank have been misapplied by such officers so as to render such officers liable for fraud and embezzlement. And where an officer of the bank has been guilty of fraud, by violating the charter of the company, against the positive instructions of the directors, or otherwise, if the directors neglect to remove such officer and continue to intrust him with the funds of the corporation, they will be considered as sanctioning the fraudulent act.

It is the duty of the officers of a bank to keep proper accounts of all loans and discounts to directors or for their use, or upon notes or securities upon which directors of the bank are responsible. And a neglect of the officers or directors of the bank to inform themselves as to the amount of such loans and discounts and responsibilities will not excuse a violation of the law on the subject.

Where the board of directors authorize their president or cashier or any other officer of the bank to make loans and discounts in his discretion, without having the same passed upon formally at a meeting of the board, the corporation is liable for a violation of its charter, or of any law binding on the corporation, in the making of such loans or discounts.

If a loan or discount is knowingly made for the benefit of a director of a bank or of a firm with which he is connected in interest, or as a co-partner, it is a loan or discount to such director, within the intent and meaning of the statutory provision limiting the amount of loans and discounts to directors of banks.

1837.

Bank Com'rs
v.
Bank of Buf-
falo.

The refusal by a bank to pay one of its drafts which had been protested for non-payment, and a continuance of banking business for more than ten days after a demand of payment without paying such draft within that time, is a violation of the charter which will authorize a dissolution of the corporation, although the officers of the bank supposed the president, who was then absent for that purpose, would be able to make an arrangement for the payment of the draft.

But where the officers of a bank refuse to pay an evidence of debt which they have probable cause to believe is not due from the bank, a continuance of banking business beyond the ten days thereafter will not subject the corporation to a loss of its charter, although it afterwards appears that the officers of the bank were mistaken, and that the debt was actually due from the bank at the time of such demand.

It seems, however, that a mistake of the officers of the bank as to the existence of the debt will not excuse the corporation from the payment of extra interest allowed by its charter for the non-payment of a debt after demand of payment.

One bank is not authorized to borrow the bills of another bank for the purposes of circulation, upon the security of a deposit of its own bills, under an agreement that the former shall furnish funds to the latter, from time to time, to redeem the bills borrowed as they shall be returned to the lending bank for payment.

It is improper, and a violation of duty on the part of the directors of a bank, to give to any of its officers an unlimited discretion to discount, or to make loans of the funds of the institution without the previous sanction of the board of directors.

Upon an application by the bank commissioners for an injunction against a bank which has become insolvent or has forfeited its charter, it is not necessary for them to state in their petition that all the commissioners met and consulted together as to the propriety of making such application. It is sufficient if the petition is presented in the names of all the commissioners by their solicitor.

Where a suit is commenced in the names of several persons by their solicitor, the court will not inquire whether such suit was authorized by all, unless some of them object to the proceedings, or the adverse party shows affirmatively that the suit is commenced and carried on in the names of some of the parties without authority.

Upon an application to appoint a receiver of the property and effects of a bank which has violated its charter, the chancellor, in his discretion and with the consent of the bank commissioners by whom the application is made, may dissolve the temporary injunction which has been issued and permit the bank to resume its business, if he is satisfied of the solvency of the institution and the integrity of its officers, and that its business may be resumed and continued without injury to the public and with safety to its creditors and stockholders.

Whether the court can exercise such a discretionary power, without the consent of the bank commissioners, where the fact of a violation of the charter of the bank is established? *Quære.*

THESE cases came before the court upon the petitions of the bank commissioners for injunctions, and for the appointment of receivers of the property and effects of the defendants, under the provisions of the 18th section of the safety fund act and of the article of the revised statutes relative to proceedings against corporations in equity. One specific ground of complaint stated in the petition against each corporation was, that the bank had violated its charter and subjected itself to this proceeding by making loans and discounts to its directors, to an amount exceeding one third of its capital stock. The City Bank was also charged with having continued its banking business without permission of the chancellor after it had neglected to pay a protested draft of ten thousand dollars drawn by the bank, and which had been presented at the banking house and payment thereof demanded. Another charge against the Commercial Bank was that it had received from the Bank of Lyons bills of the latter institution in exchange for its own bills. Upon the presenting of the petitions, verified by the oath of the state commissioner and signed by him as solicitor for all the bank commissioners, a temporary injunction was granted to restrain the several banks and their officers from doing any banking business except to receive payment in specie or in the bills of the safety fund banks of this state which were in good credit; and the defendants were ordered to show cause why the injunctions should not be made perpetual, and why receivers should not be appointed to receive the property and effects of the several banks and to settle and close up their concerns. On the part of the Bank of Buffalo it was not denied that the loans and discounts to its directors, and upon paper on which they were responsible, exceeded the one third of the capital of the bank. But it appeared from the affidavits produced that the fact of such excess was not known to the directors and cashier, although the fact appeared upon the books of the bank, until the time when the bank commissioner called upon the cashier for a statement of the loans and discounts to and liabilities of the directors. The fact that the loans and discounts of the City Bank to its directors exceeded the amount allowed by law

1837.

Bank Com'rs
v.
Bank of Buffalo.

June 23.

did not appear upon the books of the bank; as the name of one of the directors, for whose benefit and that of his co-partner in business, drafts to the amount of $29,000 had been discounted or received in payment for an acceptance of the firm in favor of the Morris Canal Company, which acceptance had been sent to the City Bank of Buffalo for collection, did not appear upon such drafts—the same having been drawn in the name of the copartner only, other persons having promised to furnish funds to take up this acceptance of the firm. The fact of the continuance of banking operations after the $10,000 draft had been presented and the bank had neglected to pay it for more than ten days was not denied. But it appeared that the president of the bank had made arrangements from which he had reason to believe he would obtain the necessary funds to pay it within the ten days; which arrangements finally failed, and he neglected to communicate the fact of such failure to the cashier and other officers of the bank in time to prevent them from continuing their banking operations beyond the time allowed by law for that purpose. The Commercial Bank had not in fact made loans and discounts to directors, who were in office at the time of the examination by the bank commissioners, beyond the amount of one third of its capital; as it appeared from the affidavits produced on the part of the bank that the amount of such loans and discounts furnished to the bank commissioner at the time of his examination of the bank was erroneous in charging a loan upon paper, on which one director was drawer and another an endorser, as a separate debt to each. It also appeared that one of the directors who was indebted to the bank to a considerable amount had resigned his situation of director previous to the time of such examination; and there was no evidence that at the time of his resignation the loans and discounts made to directors or for their benefit exceeded the amount allowed by law. The fact that the Commercial Bank had received $10,000 in the bills of the Bank of Lyons, and had deposited $20,000 of its own bills in the latter bank in exchange therefor, which had been subsequently used by the Bank of Lyons, was not denied. But it appeared

from the affidavit of the president and cashier of the Commercial Bank, that by an arrangement with the customers of that bank it was agreed that deposits made in such bank might be paid in the bills of any of the safety fund banks; and the bank then applied to the Bank of Lyons for a temporary loan of $20,000 in the bills of the latter bank, agreeing to furnish the means to redeem such bills when they should return to the Lyons Bank. And in pursuance of that arrangement, the Commercial Bank received from the Bank of Lyons $10,000 in bills of the latter, and deposited $20,000 in its own bills as security; which last mentioned bills were afterwards redeemed by the Commercial Bank in specie from the agent of one of the Albany banks.

1837.

Bank Com'rs
v.
Bank of Buffalo.

The bank commissioners insisted that each of the banks had violated the provisions of its act of incorporation and the laws of this state which were binding upon such banks, but expressed a willingness, in reference to the peculiar situation in which the commercial business of Buffalo would be placed if all their banking facilities were destroyed, that the banks should be permitted to resume banking business under such restrictions and regulations as the court might prescribe, if the chancellor in his discretion should be of opinion that they could do so with safety to their creditors and stockholders and to the interests of the public. On the part of the banks it was insisted that they had done no act which would authorize this proceeding against them to wind up their concerns and deprive the corporators of their banking privileges; and also that it should have appeared from the petitions that all the bank commissioners had met together and consulted as to the propriety of these proceedings before the petitions were presented.

*C. Stebbins & G. R. Davis,* for the petitioners.

*M. Fillmore & W. A. Moseley,* for the Bank of Buffalo.

*S. Stevens & G. P. Barker,* for the City Bank.

*M. T. Reynolds & S. Beardsley,* for the Commercial Bank.

THE CHANCELLOR. It is not denied by the counsel for the Bank of Buffalo that there has, as to that bank, been an actual violation of the provision of the revised statutes which prohibits the directors of a monied corporation from making loans or discounts to the directors of the corporation, or upon paper on which they or any of them are responsible, to an amount exceeding in the aggregate one third of the capital stock of the company. (1 *R. S.* 590, § 1, *sub.* 9.) It is insisted, however, in behalf of all these banks, that this is not such a violation by the corporation of its act of incorporation as will authorize the bank commissioners to apply to the chancellor for an injunction against the corporation and its officers to restrain them from exercising their corporate privileges, and for the appointment of a receiver to wind up the affairs of the company, in pursuance of the directions contained in the eighteenth section of the safety fund act. This objection proceeds upon the supposition that the restrictions contained in the several subdivisions of the first section of the title of the revised statutes relative to monied corporations are only binding upon the directors of the company as individuals, and not restrictions upon the corporation itself. In this, however, I am fully satisfied the counsel for the defendants are wrong. The object of the legislature was to prevent the corporation from doing any of the acts prohibited in this section of the statute. And the term *directors* is used for the corporation itself, or as the board or body exercising the corporate franchises, by whom or under whose direction or authority alone these violations of the statute could ever occur. The 33d section of the act incorporating the Bank of Buffalo, (*Laws of* 1831, *p.* 81,) and the corresponding section in the charters of the other two companies, in terms, make these provisions of the revised statutes and all provisions contained in the same chapter, except such as have been repealed or modified, applicable to the corporations of the several Buffalo Banks, as if they were actually contained in their acts of incorporation. The restriction upon the amount of loans and discounts to the directors, or upon their security, is therefore a provision of the acts of incor-

poration of these several companies, within the intent and meaning of the 39th section of the article of the revised statutes relative to proceedings against corporations in equity, (2 *R. S.* 463;) the violation of which by the company or its authorized officers will authorize a proceeding against the company in this court by injunction, and the appointment of a receiver of the effects of the corporation. The statute does not in terms authorize this court, upon such a suit instituted here, to decree a formal dissolution of the corporation. But by an examination of the 44th section of this article relating to proceedings against corporations in equity, it will be perceived that the legislature contemplated the making of a final decree on the bill or petition against the company, which was to deprive it of all its corporate property and powers. And as the receiver who is appointed upon such a proceeding, unless restricted in his powers by the order for his appointment, is absolutely vested with all the corporate property and effects, and is authorized to distribute the surplus thereof among the stockholders after payment of the debts of the company, it follows of course that a final order or decree for the appoinment of such receiver is a virtual dissolution of the corporation. (*See* 2 *R. S.* 464, § 41, 42, 44; *Idem,* 469, § 68, *and* 471, § 83.) I have no doubt, therefore, that this court has the jurisdiction and power to decree such a dissolution of either of these companies whose board of directors has violated the provisions of their charter restricting the amount of loans or discounts to directors, or has authorized or permitted the officers of the bank to violate the same.

All loans and discounts made by the officers of the company from its corporate funds must be presumed to have been made by the authority of the directors, unless they show that the funds of the bank constituting such loans have been improperly appropriated for that purpose, against the instructions of the board of directors or without authority, so as to make the officers guilty of a fraud or embezzlement. And even where the officers of the bank have been guilty of a fraud by violating the charter against the positive instructions of the directors or otherwise, if the directors neg-

lect to remove such officers and continue to entrust them
with the bank funds, they will be considered as sanctioning
the fraudulent act.

A neglect by the officers of the corporation to inform
themselves of the amount already loaned to directors, can-
not justify a violation of a positive law of the state which it
is their duty to know and conform to. If the board of di-
rectors authorize or allow their president or cashier, or any
other officer of the bank to make loans or discounts in his
own discretion, without having the same formally passed
upon at a regular meeting of the board, the corporation
is liable for a violation of its charter, or of any law
binding on such corporation, in the making of such loans or
discounts.

The objection that it does not appear from the petitions
that all the bank commissioners met together and consulted
as to the propriety of making the applications before the
petitions were presented, is not well founded. The peti-
tions are presented in the names of all the commissioners, by
one of them as solicitor for the whole. Where several
persons join in a suit in this court by their solicitor, the court
will not inquire whether the same is authorized by such
parties, unless some of them object to the proceeding, or the
adverse party shows affirmatively that the suit has been im-
properly instituted by some of the complainants or petition-
ers in the names of the others without authority. In the
case of *Bronson* v. *Mann*, (13 *John. Rep.* 460,) the supreme
court held that where a legal proceeding was to be insti-
tuted by the commissioners of highways as such, it was not
necessary that they should all meet or consult and agree to
make the application in order to render the institution of
such proceeding valid. In the present case the statute ex-
pressly authorizes the bank commissioners or any or either
of them to make the inspection and examination for the
purpose of ascertaining whether any bank has violated its
charter, or any other law of the state binding on the corpo-
ration; and if upon such examination or otherwise, such
commissioners shall discover any such violation, they should
immediately apply to the chancellor for an injunction. The

1837.

Bank Com'rs
v.
Bank of Buf-
falo.

statute evidently contemplates a very summary remedy for the abuse of chartered privileges, and to protect the rights of those who are interested in the funds of the bank, either as creditors or stockholders ; to whom great injury might result if it was absolutely necessary to assemble all the commissioners from distant parts of the state to consult to-gether before any application could be made to the court for relief. The section of the revised statutes relied upon by the counsel for the banks, (2 *R. S.* 555, § 27,) is not a restriction upon the powers of public officers, trustees and others ; but was intended to enlarge the powers of a ma-jority, so as to give them a right to exercise a power in some cases in which it would have been necessary, if this statutory provision had not been adopted, to have obtained the concurrence of the whole to exercise the power.

The fact that the officers of the bank proceeded to make additional loans or discounts to directors or upon paper up-on which they were responsible without taking the proper precautions to ascertain whether such additional loans or discounts would not exceed the legal limit, cannot exempt the corporation from liability to be proceeded against for a violation of the provisions of its charter. It is the duty of the officers of a bank to keep a proper account of loans or discounts for the benefit of the directors, either as indi-viduals or where they are concerned with others as part-ners or otherwise, and of the paper discounted upon which they are answerable as endorsers, &c. And the power of making loans or discounts to directors or for their benefit should only be entrusted to the board of directors at one its regular meetings, unless it be for a very limited a-mount. Neither should the board of directors authorize or permit the financial officers of the bank to make loans or discounts to any person beyond a certain limited amount, or whereby the liabilities of any individual or company would exceed such amount. Indeed no individual part-nership firm, whether in the direction or otherwise, what-ever may be the extent of his or their business and supposed responsibility, should be allowed to absorb the whole or a very large amount of the loans or discounts of

the institution even with the immediate sanction of the board of directors. Such management by those who are entrusted with the control of the affairs of the institution is inconsistent with the objects for which its charter was granted. It is also inconsistent with the duties of the directors of the bank to its own stockholders; as it necessarily cripples the means of the institution and endangers its safety by the failure of a single individual or copartnership firm. And I have no doubt that the embarrassments under which these Buffalo banks and many others in the state have labored since the commencement of our present commercial difficulties may be attributed, in a great measure, to a disregard of the correct principles of banking and the unlimited control which a very few persons have been permitted to exercise over the loans and discounts of the banks with which they are connected.

In the case of the City Bank, although the books of the institution do not show an excess of loans and discounts to directors beyond the amount allowed by law, I am satisfied that the charter has been violated in this respect. If a loan or discount is knowingly made for the benefit of a director, or of a firm with which he is connected in interest or as a copartner, it is a loan or discount to him, within the intent and meaning of the legislature, although the name of the director of this firm does not appear upon the discounted paper, or he does not guaranty the payment of the loan. And the bank cannot by making the discount or loan nominally to another person evade this provision of the statute, so as to save itself from the consequences of such a violation of the charter. And this court will not suffer a salutary restriction of this kind to be evaded by any device whatever, if the substance of the act complained of is precisely that which the legislature intended to prohibit. In the present case the draft of $29,000, which was taken by the bank from Smith, in payment of the acceptance of Smith & Macy, which had been sent to the bank for collection and had then become due, was clearly a loan for the benefit of that firm to enable them to meet and take up their acceptance, although other persons had promised to see it paid when it became

due. And the court cannot shut its eyes to the obvious fact that the draft on Hicks & Co. was made in the name of Smith alone, instead of the names of the firm, upon the mistaken supposition that the discount of such a draft would not be a violation of this provision of the charter, as a discount to Macy who was a director in the bank. If Smith & Macy had been in no way connected with this institution, no one can reasonably suppose that the officers of the bank would have taken this draft of the individual partner for such a large amount, instead of the security of the firm, in payment of a demand sent there for collection by another institution.

The continuance of the business of this bank, after it had neglected for more than ten days to pay the draft of $10,000 which had been demanded at the banking house, was also a violation of the charter which authorized the bank commissioners to institute these proceedings. A mere refusal to pay a note or bill or other evidence of debt issued by a bank, where the officers of the institution had probable cause for believing that the bank did not owe the debt and therefore was not bound to pay it, would not subject the institution to a loss of its charter; although it should afterwards be ascertained that the debt was legally due. In such a case, however, the holder of the bill or draft would probably be entitled to his ten per cent damages, in lieu of interest, until payment was actually made according to the provisions of the 31st section of the act of incorporation. Here there was no doubt as to the liability of the bank to pay the draft which it had issued for the redemption of its bills. But the cashier neglected to pay it when demanded upon the erroneous information that the president had made arrangements by which it would be paid elsewhere. The statute however is imperative; and the officers of the institution went on at their peril after the expiration of the ten days, without informing themselves of the fact that it was not paid. But the situation of the commercial community at that time, and the notorious fact that all the other banks in the state suspended specie payments within a few days thereafter, the necessity and propriety of which was ac-

knowledged and sanctioned by a legislative act, would of it-
self render it improper for the bank commissioners to en-
force the penalty against this institution for that cause alone,
if it can now proceed with its banking operations with
safety to the public, and can obtain authority from the chan-
cellor for that purpose in conformity to the 30th section of
its act of incorporation.

It is admitted by the bank commissioners that they were
misled and acted under a mistake in supposing that the
Commercial Bank at the time of the examination had loaned
or discounted to its directors more than the amount author-
ized by the statute. But it is insisted that this bank has
been guilty of a violation of its charter in receiving from the
Bank of Lyons the bills of that institution in exchange for
its own bills. And I agree with the bank commissioners
that it appears from the statement of this transaction, as
made by the president and cashier, that it was not only
contrary to the correct principles of banking as authorized
by the laws of this state, but also a violation of that provis-
ion of the revised statutes which prohibits a bank from receiv-
ing the bills of another monied corporation in exchange for its
own. It is avowed by the officers of the Commercial Bank
that their object in obtaining the bills of the Bank of Lyons
was to pay them out for deposits in lieu of their own bills
which they would be compelled to redeem in specie. The
effect of this arrangement would therefore be to substitute a
circulating medium in the neighborhood of the Commercial
Bank which was not payable in specie there but at a dis-
tance, in lieu of its own bills which, if issued, could be im-
mediately converted into specie at the will of the holders
thereof. This was probably one of the principal evils which
the legislature intended to guard against in prohibiting a
monied corporation from receiving from another the notes or
bills of the latter in exchange for its own. The Commercial
Bank received these bills of the Bank of Lyons in exchange
for its own, even if there was an express agreement on the
part of the Bank of Lyons that they would not use the Com-
mercial bills until after notice that its own bills had come
back and been redeemed, and a neglect on the part of the

1837.

Bank Com'rs
v.
Bank of Buf-
falo.

Commercial Bank to furnish funds to meet them. It is very evident, however, that such was not the agreement in this case. And the officers of the Bank of Lyons were not probably guilty of an act of bad faith towards the other institution, although the operation intended to be effected by both parties did not succeed, as to one at least, in the manner contemplated. The president and cashier, however, both swear that they had no intention of violating the provisions of the statute, and they probably acted without legal advice and perhaps without knowing or adverting to the statutory provision on this subject.

Upon the whole, I conclude that all three of the Buffalo banks have violated their charters in such a manner as would authorize this court to grant a perpetual injunction against the further exercise of their corporate franchises; and to place their property and effects in the hands of receivers to wind up the institutions.

Considering the peculiar situation of the monied institutions and affairs of the state and of the union at the time when the acts complained of occurred, and the great injury which the commerce of the west, and of the city of Buffalo in particular, would sustain if all the banks in that place should be destroyed, and all the debts now due to them should be immediately called in by forced collections, I think the bank commissioners have very properly submitted the question to the discretion of the court to say whether the banks should be allowed to resume their banking operations, if the chancellor is satisfied from the exhibition of the statements of their concerns and the responsibility of their debtors and the integrity of those who now compose their several boards of directors, that they can be allowed to proceed with safety to their creditors and stockholders and without injury to the public interests of the state ; and subject to such regulations and restrictions as may be proper during the continuance of the suspension of specie payments by the banks generally.

In the exercise of that discretion, therefore, and believing it will advance the interests of the public as well as of the creditors and stockholders of these banks, I shall dissolve the

injunctions and permit them to resume their business; subject, however, to the following restrictions and regulations; with liberty to the bank commissioners to make an ex parte application for a restoration of the injunction against any of such banks, upon an affidavit that such regulations have not been complied with; and for further proceedings upon the present petition to appoint a receiver to wind up its concerns:

1. Those banks which have made loans or discounts to or for the benefit of their directors, or upon paper upon which they or any of them are responsible, beyond the amount allowed by law, shall within thirty days call in or reduce the amount within the required limits. And the several banks shall within the same period satisfy the costs of these proceedings, and pay or secure to the satisfaction of the comptroller the bills redeemed by him out of the safety fund, or on account of that fund, under the act of May last, and before any new bills of the banks shall be issued or new debts contracted by such banks.

2. That during the time of the suspension of specie payments, these banks shall not make any loans or discounts to or for the benefit of a director or of his partner in business, either directly or indirectly, whereby the whole amount of loans and discounts made to or for the benefit of such director and his co-partners, or any of them, either jointly or severally, and remaining unpaid, shall at any time exceed one thirteenth of the capital of the bank; that no loan or discount shall be made to any person for a longer time than three months exclusive of the days of grace; nor shall any renewal be for a longer period; that no loan or discount shall be made to or for the benefit of any individual or company, beyond the amount of $5000, except it be under the immediate direction of a majority of the directors at a regular meeting of the board, or any loan or discount whereby the amount due from the person to whom or for whose benefit the same is made, or from him and his partners in business, either jointly or severally, shall exceed $5000; that no loan or discount whatever shall be made to any director, or any person or persons connected with him

in business, or to any person for his or their benefit, unless it be made under the immediate direction of a majority of the directors at a regular meeting of the board ; that no individual or company shall be permitted to overdraw his or their account with the bank ; that no loan or discount shall be made to any person or for his use or benefit to enable him to purchase or pay for any shares of the stock of the bank ; and that no loan or discount shall be made to or for the benefit of any person or firm who does not endorse or guaranty the payment of the notes or securities given for such loan or discount.

3. That during the time of the suspension of specie payments, these banks shall conform to such other regulations and restrictions as the bank commissioners, or any two of them, may from time to time prescribe, with a view to the safety of the public, or to ensure the proper management of the affairs of the institution.