JOHN P. HOLLINGSHEAD, Respondent, *v.* WILLIAM WOODWARD, Jr., Appellant.

Under the provision of the General Manufacturing Act (§ 24, Chap. 40 Laws of 1848), declaring "that no suit shall be brought against any stockholder" of a company organized under said act "who shall cease to be a stockholder * * * unless the same shall be commenced within two years from the time he shall have ceased to be a stockholder," when. ever a stockholder shall be divested of his interest in or control over the affairs of the corporation, by actual dissolution thereof by formal judgment, or by a surrender of its corporate rights, privileges and franchises, the time begins to run, and at the end of two years therefrom the stockholder is no longer liable for any debt of the corporation.

In an action seeking to charge defendant as a stockholder of such a corporation with a judgment against it, on the ground that the whole capital stock was not paid in, or a certificate of payment filed as required by the act, the answer set up among other things, in substance, that more than four years before the commencement of the action a judgment was ren-

dered in an action against the corporation sequestrating its property, appointing a permanent receiver thereof and restraining its officers and agents from all interference with it; that said corporation has not since transacted any business; that the receiver took possession of the property and has distributed the proceeds among creditors pursuant to order of the court, the same not being sufficient to pay all of the company debts, and that defendant by reason thereof ceased to be a stockholder from the date of said judgment. On demurrer *held*, that the answer set up a good defense; that by the conceded facts it appeared that when the organization was divested of its rights, privileges, franchises and property by virtue of the appointment of a receiver, it for all practical purposes ceased to exist, and the defendant ceased to be a stockholder within the meaning of the act, and after the expiration of two years he was discharged from all liability.

*Kincaid* v. *Dwinelle* (59 N. Y. 548) distinguished and limited.

(Argued May 9, 1887; decided October 11, 1887.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made the first Monday of January, 1885, the nature of which and of the action, and the material facts are stated in the opinion.

*Thomas G. Shearman* for appellant. The statute which creates the personal liability of stockholders, also provides that no suit shall be brought against any stockholder who shall cease to be a stockholder in any such company, for any debts so contracted, unless the same shall be commenced within two years from the time he shall have ceased to be a stockholder in such company. (Manufacturing Act, § 24; 3 Edmunds' Stat., 738.) The facts alleged in the third defense amounted in law to a dissolution of the corporation. (*Slee* v. *Bloom*, 19 Johns. 456; *Briggs* v. *Penniman*, 8 Cow. 387; *Bk. Pough-keepsie* v. *Ibbotson*, 24 Wend. 473; *Story* v. *Furman*, 2 N. Y. 214, 225, 230; *Bruce* v. *Platt*, 80 id. 379; *Brad* *Benedict*, 17 id. 93; *Webster* v. *Turner*, 12 Hun, 264; *S Sav'g Asso.* v. *Kellogg*, 52 Mo. 583; *Perry* v. *Turner*, 55 id. 418, 427; *Dryden* v. *Kellogg*, 2 Mo. App. 87; *Wiswell* v. *Starr*, 48 Me. 401; *Dane* v. *Young*, 61 id. 160; *Kincaid* v. *Dwinelle*, 59 N. Y. 548.)

*Thomas S. Moore* for respondent. The Eagle Mowing & Reaping Machine Company has never been dissolved, and the defendant has never ceased to be a stockholder. (*Kincaid* v. *Dwinelle*, 59 N. Y. 548; *Bk. Com'rs* v. *Bk. of Buffalo*, 6 Paige, 497, 553.) Nothing but an act of the legislature repealing its charter; or a decree of a competent court, can dissolve a corporation so as to preclude suits and actions against it to enforce its debts and liabilities. (*L. O. Nat. Bk.* v. *Onondaga Co. Bk.*, 7 How. 549; *Prigle* v. *Woolworth*, 91 N. Y. 510; *Lee* v. *Am. A. P. Canal Co.*, 3 Abb. [U. S.] 11.)

DANFORTH, J. This action was brought by the plaintiff, as a creditor of the "Eagle Mowing and Reaping Machine Manufacturing Company," against the defendant as a stockholder therein, to the amount of 125 shares of its capital stock. The defendant, by way of answer, set up three defenses. The plaintiff demurred to the second and third defenses for the reason, as alleged, that "neither states facts sufficient to constitute a defense to the action." At Special Term the court held that each defense was sufficient, the second to so much of the complaint as it undertook to answer, and the third as to the entire cause of action; overruled the demurrer and dismissed the complaint upon the merits. Judgment was accordingly entered in favor of the defendant. Upon appeal to the General Term, the judgment, so far as it overrules the demurrer to the second defense, was affirmed; but so far as it overrules the demurrer to the third defense and awards final judgment to the defendant, it was reversed and judgment ordered in favor of the plaintiff upon the merits of the third defense, with leave to each party to amend his pleadings as he might be advised. One judge dissented, being of the opinion that as one of the defenses was sustained, the judgment of the Special Term should be affirmed *in toto*. The court were also of the opinion that the questions involved were of sufficient importance to make the decision of the Court of Appeals desirable, and so ordered. From so much of the judgment as sustained the demurrer to the third defenes

the defendant appeals. The questions before us, therefore, require only an examination of the case as it stands upon the complaint and third defense.

The complaint states that the "Eagle Mowing and Reaping Machine Company" was a corporation organized in 1873, under the manufacturing laws of this State (Laws of 1848, chap. 40); that the whole capital stock has never been paid in, nor the certificate of payment filed as required by that act; that on the 30th day of October, 1878, it made its note for $3,300, and on the 21st of August, 1878, became liable as indorser upon two other notes for $2,500 and $5,000, respectively, all of which were transferred to the plaintiff and came to maturity within three months after October, 1878; that he recovered judgment thereon against the company December 13, 1883, and on the 22d of December, 1883, the execution issued for its enforcement was returned unsatisfied; that on the 26th of December, 1878, one F. was duly appointed receiver of the property, things in action and effects of the said company, that he has duly qualified as such receiver, and that the business of the company has ever since been abandoned, and that it was, on said 26th day of December, 1878, insolvent and unable to pay its debts; that, at the time the notes aforesaid were made and indorsed, the defendant was a stockholder in the company, as above stated.

The third defense sets forth that on the 16th day of January, 1879, and more than four years prior to the commencement of this action, a judgment was rendered by the Supreme Court of this State, in an action wherein the Continental National Bank of the city of New York was plaintiff, and the Eagle Mowing and Reaping Machine Company was defendant, whereby it was duly adjudged" that all the stock, property and effects of the said Eagle Mowing and Reaping Machine Company, being the corporation referred to in the complaint, should be sequestrated for distribution among its creditors, and that one F., should be, and he was by the said judgment, appointed the permanent receiver of all the stock, property and effects of the said corporation, and vested with

the exclusive control thereof; and the officers and agents of the said company were thereby restrained from all interference with such stock, property and effects; that the said receiver took possession of all the stock, property and effects of the said corporation, on the same day upon which judgment was entered, and since that date, and for more than four years prior to the commencement of this action, the said corporation has not transacted and could not transact any business, has not elected any trustees or other officers, and has not had any, and no transfers of its stock have been permitted or possible; that all the property and effects of the corporation have been distributed among its creditors by the said receiver, under direction of the said court, in pursuance of the judgment; and the same were not sufficient to satisfy the debts due from the said corporation to its creditors; and there is not, and never will be, any surplus for the stockholders thereof; that the defendant is advised and believes the said judgment of sequestration, and for the appointment of a receiver, as aforesaid, amounted in law to a dissolution of the said corporation; and that this defendant, by reason thereof, ceased to be a stockholder in the said corporation from the date of the said judgment, which was more than four years before the commencement of this action."

It is, therefore, assumed that at one time a liability existed on the part of the defendant and the question presented turns upon that part of section 24 of the Manufacturing Law (*supra*)), which provides that "no suit shall be brought against any stockholder who shall cease to be a stockholder in any such company * * * unless the same shall be commenced within two years from the time he shall have ceased to be a stockholder in such company." It follows from this enactment that whenever an existing stockholder shall be divested of his interest in or control over the affairs of a corporation, whether by voluntarily transferring his share to another person, or compulsorily as by forfeiture upon the declaration of the company (§ 8), time begins to run, and at the end of two years the statutory limit is reached and he is no longer liable for any debt

of the corporation. The same result must follow upon the actual dissolution of the corporation by formal judgment, or by a surrender of its corporate rights, privileges and franchises. Organization then ceases and the artificial entity is resolved into its independent parts. The thing itself therefore no longer existing, there can be no shares in the thing and of course no stockholders. By the conceded facts in this case the company is brought within these conditions. On the 26th of December, 1878, it was insolvent and unable to pay its debts, its notes were refused payment, its ordinary and lawful business was not only suspended, but by the very language of the pleadings and so by concession of the parties, plaintiff as well as defendant, " its business has ever since been abandoned." All the circumstances are present which create a surrender, and this effect is produced without waiting for a judicial determination. For more than two years then before the commencement of this action the company had been divested of all rights, privileges or franchises which had been acquired under the laws of this State.

The proposition that the defendant, by force of such circumstances, ceased to be a stockholder within the meaning of the act, is also distinctly established by the authorities, and with such uniformity and for so long a time that further discussion, save by reference to them, is rendered unnecessary. They began with *Slee* v. *Bloom* (19 Johns. 456), were continued to *Bradt* v. *Benedict* (17 N. Y. 93), where, citing that and other cases, the doctrine was declared to be settled that if a corporation suffers acts to be done which destroy the end and object for which it was instituted, it is equivalent to a surrender of its rights. The rule was reiterated and these cases approved in *Bruce* v. *Platt* (80 N.Y. 379). The case of *Slee* v. *Bloom* (*supra*), arose under the Manufacturing Act of 1811 (Laws of 1811, chap. 67), which declared (§ 7), that the persons composing the company at the time of its dissolution should be individually responsible for all debts then due and owing by it. The plaintiff was a creditor of the " Dutchess Cotton Manufacturing Corporation," and proceeded in April, 1819, under

the section cited, to make the defendants liable for the debt. It appeared that there had been no judicial dissolution, but after December, 1817, there had been no meeting of the trustees, nor any business or act done by the corporation, and on the 1st of February, 1818, all the property of the corporation, real and personal, was sold by a sheriff under execution. It was held by the Chancellor (5 Johns. Ch. 366) that the corporation was not dissolved and the bill was denied, but on appeal the Court of Errors held otherwise, saying that by these circumstances the corporation became *ipso facto* dissolved within the meaning of the statute and that the defendants were liable. To the same effect are *Briggs* v. *Penniman* (8 Cow. 387), and *Bank of Poughkeepsie* v. *Ibbotson* (24 Wend. 473). In these cases the persons composing the company at the time of such dissolution were held liable, because the event on which their liability depended had in fact happened. In *Bruce* v. *Platt* (*supra*), and other cases, the same principle upon similar circumstances was applied to relieve a party otherwise liable, because by the practical dissolution of the company, its trustees were excused from making the report required by the act of 1848. It should be applied here.

The case before us is in its facts stronger for the appellant than those cited. The company had no property subject to levy and sale on execution, and that process was returned wholly unsatisfied. It next abandoned its business, and then by formal judgment of the Supreme Court "its stock, property and effects" were sequestered for distribution among its creditors through the medium of a receiver, and its officers and agents relieved from all interference therewith. The receiver then stood in place of the corporation, and by virtue of his appointment and the statutes which defined his powers and duties (2 R. S. tit. 4, page 3, chap. 8, art. 2, §§ 36, 37; id. art. 3, §§ 70–83) the corporation for all practical purposes ceased to exist.

The final decree under these statutes deprived the company of all its corporate property and powers, and vested both in the receiver. Moreover, if after payment of its debts there had remained a surplus, he would have restored it, not to the

corporation, nor even to the shareholders according to the shares held by them, but "in proportion to the respective amounts paid in by them severally on their shares of stock." (§ 83, p. 471.)    "It follows of course," said the Chancellor in *Bank Commissioners* v. *Bank of Buffalo* (6 Paige, 497) "that the final order or decree for the appointment of such a receiver, is a virtual dissolution of the corporation."

Moreover, this judgment has been enforced.    The property of the company is exhausted, still leaving its creditors unpaid, and for more than four years the company neither has transacted business, nor been able to do so.    The defendant is saved, therefore, upon the principle applied in *Slee* v. *Bloom*, and subsequent cases of that kind (*supra*), and also by the necessary effect of the judgment and the statute under which the receiver was appointed.    He ceased to be a stockholder within the meaning of the act of 1848 (*supra*, § 24), and before this action was commenced the statutory prohibition contained therein attached, and he was no longer liable to be vexed by action.

The argument of the respondent rests on *Kincaid* v. *Dwinelle* (59 N. Y. 548).    In that case a receiver was appointed, security given, and the fact reported to the court, but this was *ex parte* and the learned judge who delivered the opinion says : "No other proceeding was had in the action. Whether the injunction was ever served, or any notice of the receiver's appointment given to the corporation, does not appear," and he adds that the receivership, although differing somewhat in its extent and purpose from an ordinary receivership for the preservation of property *pendente lite* was, nevertheless, but a provisional remedy and necessarily temporary, subject to the further action and direction of the court and to any final judgment that might be given in the action.    The case at bar goes much beyond the one cited.    The remarks of the learned judge in argument must be restricted to the facts before him and the general statement as to the necessity of a judicial sentence of dissolution qualified by the reference to *Slee* v. *Bloom* (*supra*), and the distinction suggested between a temporary and final order, a provisional and a permanent

receiver. Surely a person cannot justly be said to be a stock-holder when the corporation itself has ceased to exist for all purposes for which it was created. Not only was the visible and tangible property of the corporation whose acts are before us absolutely and forever disposed of by adverse proceedings, but by the final judgment of the court it was deprived of all power to continue or resume business. This judgment was submitted to and there was neither intention or ability to go on.

The Special Term, therefore, properly held that it must be deemed to have surrendered its charter and to be dissolved in fact. The judgment of that court should, therefore, be affirmed, and the judgment of the General Term, so far as appealed from, reversed.

All concur, except PECKHAM, J., not sitting.

Judgment accordingly.