McAdam, J.
“ Formeradjudications made in actions *431 between the same parties on the identical agreement have conclusively determined several matters which must now be regarded as authoritatively settled. First. That the contract sued upon is valid and enforceable. Lorillard v. Clyde, 86 N. Y., 384. Second. That the defendants were liable upon it during the time the corporation subsisted defacto, although there existed causes for its dissolution. Same v. Same, 16 J. & S., 409, aff’d 99 N. Y., 196. Third. That separate actions may be brought on the contract as the installments fall due, and separate recoveries had in each. Same v. Same, 122 N. Y., 41. Fourth. That the plaintiff was in no legal sense a party to the action by the people of the state, and not concluded by the findings therein. Same v. Same, 16 J. & S., 409 ; 99 N. Y., 196, supra.
“ The only phase of litigation not fully covered by these determinations is the effect of the final dissolution of the corporation upon the rights and liabilities of the parties; and in disposing of this issue the nature and purpose of the special agreement sued upon must be kept prominently in view. The contract was made prior to the formation of the corporation, was not merged in it, but was to exist independently of it. It was not an obligation to pay dividends, technically so-called, for that term means a sum which a corporation sets apart from its profits to be divided among its members. Lockhart v. Van Alstyne, 31 Mich., 76; Taft v. The Hartford R. R. Co., 8 R. I., 310; Morawetz on Corporations, § 457. And no corporation can declare a dividend except from surplus profits. 2 R. S., 7th ed., p. 1364, § 1. And it is an offence to withdraw or pay a stockholder any part of the capital stock. Penal Code, § 594.
“ It is evident, therefore, that the term dividends was used in the agreement arbitrarily, not in its literal sense, and merely as indicating a profit the plaintiff was to receive not from the corporation but from the defendants, for they were to pay the plaintiff the so-called dividends *432 whether the corporation made profits or losses, and without regard to the amount of either. The payments were to continue absolutely, and at all events for the period of seven years, the promise to pay being the consideration, upon which the plaintiff consented to the consolidation, transferred the competing line to the corporation and yielded its management to the care of the defendants.
“ The plaintiff did all he agreed to do, and the defendants took the responsibility of every contingency that might happen for seven years thereafter.
“ The plaintiff had the right to assume that the defendants, upon taking control of the corporation, would manage it within the limits of the corporate' charter. The power to control certainly implied the duty of managing the trust faithfully and with due regard to the state as well as to the individual rights and interests of all concerned. The defendants must be held to have known that in case of misuser of the corporate franchises, or departure from any of the specific objects for which the corporation was instituted, it was liable to have its charter annulled at the suit of the state ; for, as Justice Story said in Terrett v. Taylor, 9 Cranch, 51: ‘A private corporation may lose its franchises by a misuser of them, and they may be resumed by the government under a judicial judgment upon a quo warranto to ascertain and enforce the forfeiture. This is the common law of the land, and the tacit condition annexed to the creation of every such corporation.’
“ The possibility of forfeiture depending, as it did, upon the proper management of the corporate affairs by the defendants, was not permitted by the plaintiff to be made a condition upon which the payments promised were to cease, and no such condition can be added now by implication or otherwise. The plaintiff did not rescind the agreement, and brought no action calculated to determine it, or to absolve the defendants from its complete performance.
*433 “Suits to determine the forfeiture of corporate franchises must he at the instance and under the authority of the King, in England, and of the state in this country. Private individuals have no control of the proceedings, for they are matter of public and not of private concern. The provisions regulating such actions are contained in section 1798 of the Code, and the form of judgment is prescribed by section 1801; and there is nothing in either section, or in the procedure, which operates upon or affects the agreement in suit.
“ If it had been an agreement where dividends were to he paid from the earnings of the corporation, it would even then be unnecessary to consider the effect of the judgment dissolving the corporation, for the reason that the want of earnings would he a complete defence in itself without reference to the cause of their non-existence. But, as before suggested, it is immaterial under this agreement whether there were profits or even losses, for, without regard to either, or the sources from which losses might arise or profits accrue, the plaintiff was to receive from the defendants a sum equal to seven per cent, upon his capital stock, and this they were to pay absolutely and without reference to any future possibility. The rule is that when a party has undertaken absolutely to do a thing he is not excused from liability by the occurrence of events which render the performance of his promise impossible; or, as Blackburn, J., expressed it, ‘ We think it firmly established, both by decided cases and on principle, that where a party has either expressly or impliedly undertaken, without any qualification, to do a thing and does not do it, he must make compensation in damages, though the performance was rendered impracticable by some unforeseen cause over which he had no control. Ford v. Cotesworth, L. R., 4 Q. B., 134. If a person create a charge upon himself he is bound thereby, notwithstanding the occurrence of any contingency, because, if he had chosen, he might have provided *434 .against it by the stipulations in his contract. Chitty on Con., 11th Am. ed., 1074-1075 ; 3 Am. and Eng. Enc. of Law, 900.’
“The claim that the proceeding by the state which resulted in taking from the defendants the management of the corporation interfered with their performance of the contract with the plaintiff is sufficiently answered by the fact that the action of the state was founded solely on the misconduct of the defendants as managing agents. Morawetz on Corp., 1016. The defendants should have foreseen and prevented these consequences. Proper management would have averted them and rendered state or private interference or loss of control impossible. In this aspect of the case reference may be made to another rule, which holds that where performance of a contract is rendered difficult, or even impossible, by the act of the party who is chargeable therewith, such impossibility furnishes him with no defence to an action founded on the obligation Ghitty, supra, § 1079; Woolner v. Hill, 93 N. Y., 576. The action was brought by the state, and Lorillard was subsequently joined as co-plaintiff by consent. His presence added no force to the proceeding. He did not seek or obtain any personal relief, nor could he receive any in that action. The judgment did not pass on his legal rights under the contract in suit, and nothing was adjudicated against him. The fact that the plaintiff encouraged the state to assert its rights against the defendants and indemnified its costs did not turn that litigation into one of his own. Lorillard could gain no personal advantage by that litigation, and he suffered no pecuniary loss from it. The state was asserting a sovereign right in an action which it alone could maintain, and joining a private individual as co-plaintiff or relator neither impaired nor enlarged the scope of the proceeding. If the litigation had been one calculated to transfer the management of the corporation from the defendants to *435 the plaintiff, or if Lorillard had been joined as defendant, and had, with the other defendants, been adjudged guilty of the wrongs committed, the judgment in that proceeding might have had some significance, but that is not this case. If the plaintiff’s contract had been with the corporation, its dissolution might, perhaps, have terminated it. Corporations are born of the state and may die by expiration of charter, or by annulment, or dissolution. At common law the assets of a dissolved corporation reverted to the Crown, and the debts due by it were canceled. 2 Kent’s Com., 307; Angell & Ames on Corp., 667. The statute changed this inequitable principle by declaring that on the dissolution of a corporation, the directors or managers thereof (unless some other person be appointed by the legislature or the court) shall be trustees of the creditors and stockholders. 2 R. 8., 7th ed., p. 1531, § 9. So that, although the corporation may die, its estate is to be administered in practically the same manner as the estate of any natural person. The expiration of the charter does not terminate the corporate existence in such a sense as to prevent an action in the corporate name by its sole surviving director to establish its rights of property for the benefit of stockholders. Taylor v. Holmes, 127 U. S. R., 489. Nor does a lease to the corporation terminate by its dissolution. People v. Trust Co., 82 N. Y., 283. The case of the People v. Globe M. L. I. Co., 54 How., 240, affd 91 N. Y., 174, was a contract for personal services which, in its nature, was terminable on the death of either of the contracting parties. And so People v. O’Brien, 111 N. Y., 54. But it is idle to discuss what effect the death of the corporation would have produced if the contract would have been made with it, or made dependent on its continued existence. The contract was entered into by the defendants on their own behalf; was not dependent on continued corporate life for vitality or energy, and nothing within the range of possibility ex *436 cuses its performance. Beebe v. Johnson, 19 Wend., 500 ; Harmony v. Bingham, 12 Ib., 99 ; Booth v. Spuyten D. R. M. Co., 60 N. Y., 487. This principle was settled as far back as Paradine v. Jayne, given us by the old reporter, Alleyn, in 23 Charles II. The defendant there had taken a lease, covenanting to pay rent. He pleaded that a certain German Prince by the name of Prince Rupert, an alien born enemy to the King and Kingdom, had invaded the realm with a hostile army of men, and with the same force had entered upon the defendant’s possessions and him expelled, whereby he could not take the profits. On demurrer the court resolved that the matter of the plea was insufficient, and that he ought to pay his rent; and this difference, says Alleyn, was taken, that when the law creates a duty or charge, and the party is disabled to perform it without any default in him, and hath no remedy over, there the law will excuse him; but where a party, by his own contract, creates a duty or charge upon himself, he is bound to make it good if he may, notwithstanding any accident by inevitable necessity, because he might have provided against it by his contract. This was then, has ever since been, and is now the law. The obligation the plaintiff seeks to enforce was not created by the law, but By the voluntary act and contract of the parties, and the strict rule in regard to literal performances is applicable. A number of cases affirming the principle stated will be found collated in 2d Smith’s Leading Cases, 8th ed., 39. If inexorable impediments lie in the way of performance and a loss must ensue, the law leaves the loss where the contract places it. If. the parties have made no provision for a dispensation, the rule of law gives none. It does not allow a contract fairly made to be annulled, and it does not permit to be interpolated what the parties themselves have not stipulated. To do otherwise would be to make the construction of a contract depend, not upon the intention of the parties when it was *437 entered into, but upon the incidents of the future. Vide Smith, supra, pp. 40, 41. The exceptions to the rule are clearly stated in Dexter v. Norton, 47 N. Y., 64-65, and apply only where the parties contemplated the continued existence of the particular person or thing which is the subject of the contract, and such person or thing is, without the fault of either party, rendered incapable of answering the purpose of the contract, as in the case of a particular musical hall destroyed by fire (3 B. &. S., 286); the sale of a certain horse to be delivered at a future day and the horse died in the interval. Benjamin on Sales, 424; Carpenter v. Stevens, 12 Wend., 589. In the case of an apprentice who became permanently ill, and of a woman who, from illness, was unable to perform as a pianist (4 C. P., 1 L. R., 6 Ex., 269, L. R.), it was unnecessary to guard expressly against these contingencies, for they were excepted from the very nature of the undertaking. To come within the rule excusing performance, the incapacity to perform must be involuntary and without fault. In the cases put had it appeared that the hall had been destroyed or the horse killed by the negligent act of the promisor, he would have been clearly liable to make good all loss for not furnishing the thing agreed. So if the illness of the apprentice or sickness of the pianist had been caused by their own misconduct neither would have been excused from responding to damages. The law reasons and acts upon sound logical principles and considers causes in determining effects, for the legal consequences flowing from one spring may not flow from another. The case at bar, though near the border line, rests securely on that side which finds recognition in the general rule stated,, and does not reach into or invade that domain where the principle illustrated by the exception finds application. Here the administration of the corporate franchise was the direct result of wrongful conduct on the part of the defendants in their management of the property intrusted to their care *438 and control. This circumstance affects largely the legal result of the question submitted for decision. Suppose the defendants had wrongfully created corporate liabilities on which judgments had been recovered against the corporation, or had by some neglect allowed the vessels of the line to be libeled, and the management had in consequence passed from them to strangers under execution, or marshal’s sales of the corporate property. Could it have been seriously contended that such a change in the condition of things would have furnished the defendants with any legal excuse for not performing their contract with the plaintiff ? Certainly not. The plaintiff had $150,000 of his capital invested in the enterprise, and apart from the question of stipulated profits, which were incidents merely, he was interested in having the management conducted within the limits of the law, and had a right to call the attention of the state to any infraction of the charter which imperiled his capital, and this without impairing any of his legal rights, remedies or collateral obligations against those guilty of the wrongs the state attempted to right. The fact that the proceeding was instituted on information imparted by the plaintiff can have no other effect than if the facts communicated had been given by a stranger. The attorney-general was charged with a public duty, and how or from whom he obtained the information upon which he acts is matter, of little concern, so long as the information proves true and the proceeding results successfully to the state. Much of the fault found with corporations is their increasing tendency to extend their operations beyond their organic purpose. They are mere creatures of the law. Their rights and liabilities are defined by it, and it becomes the duty of the state to keep them within the limits of the powers conferred. A corporation organized to manufacture cannot engage in shipping, banking, insurance or railroading. 'Nor can corporations chartered for either of these specific pur *439 poses engage in enterprises foreign to the object of their creation. Corporations are given especial privileges, not to favor those to whom the franchises were granted, but with a view to the advantages that may accrue to the public, as in this instance from facilities afforded for travel and the movement of trade and commerce. The state is, as to domestic rights and corporations, a sovereign power. It may, through want of knowledge of an infraction of its laws, or from indifference, tolerate trivial transgressions, for toleration is not licence; but when it is called upon to right wrong, its authority is more far-reaching than many at times contemplate. This attribute of the state is to be exercised whenever the public good requires its interference, and it matters not who awakens it to its sense of duty. The people are the sequestrators, not the informant through whose agency the machinery is put in motion. Nor are the motives of the informer of any moment so long as the end justifies the means and the legal result is established which approves the action of the state in the premises. Motives can never make that wrong which in its own essence is lawful. It may be a misfortune to the defendants that they lost the source from which they expected to realize the moneys promised to the plaintiff, but after the court, in an action to annul the charter, determined that this individual misfortune was necessary to the public good, it is idle to dwell upon this phase of the case with solicitude. The efforts to prove that the plaintiff was a participator in the wrongs adjudicated to have been committed by the defendants have failed, and as a result he stands free from whatever legal consequences might have followed if he had been particeps criminis with them. There are cases in the books (and among them Hollingshead v. Woodward, 107 N. Y., 96; Sturges v. Vanderbilt, 73 Ib., 390 ; Munna v. Potomac Co., 8 Peters, 281; Reade v. Frankforth Bank, 23 Maine R., 321), holding that the dissolution of a corporation is its death; that parties *440 dealing with it contract with reference thereto; that no judgment can thereafter go against it; that a stockholder therein ceases to he such, so far as exemption from corporate penalties is concerned; but a discussion of the reasons for these decisions is unnecessary, because the principles decided do not reach the issues presented by the present record. For the same reason it is unnecessary to consider the rule that where an act is done by public authority which renders further performance of a contract impossible, the contract is dissolved. Melville v. DeWolf, 82 E. C. L. R., 842; Jones v. Judd, 4 N. Y., 411; Hildreth v. Buell, 18 Barb., 107. The contract was not made with the corporation, nor was it dependent on its continuation for support. There is no defence to the action, and the plaintiff is entitled to judgment for $33,757.50, the amount claimed, and interest.”
Boardman & Boardman, attorneys, and James C. Carter, William N. Dykman and Edwin C. Boardman of counsel, for appellants.
Glover, Sweezy & Glover, attorneys, and Richard L. Sweezy and Asa Bird Gardiner of counsel, for respondents.
Per Curiam.
The judgment appealed from is affirmed, with costs, on the opinion of the court below.